**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JENNIFER R. PSAKI,

      Movant,

v.

STATE OF MISSOURI ex rel. ERIC S.
SCHMITT, Attorney General, et al.,

      Respondents.

Misc. Case No. 1:22-mc-28

Underlying Case No.: 3:22-cv-01213
(W.D. La.)

## JENNIFER R. PSAKI'S MEMORANDUM IN SUPPORT OF HER MOTION TO QUASH A SUBPOENA

## PRELIMINARY STATEMENT

Pursuant to Rule 45 of the Federal Rules of Civil Procedure and Local Rule 45, Jennifer R. Psaki, by and through undersigned counsel, moves to quash a subpoena for deposition testimony (the "Subpoena") issued by the State of Missouri, the State of Louisiana, Dr. Aaron Kheriaty, Dr. Martin Kulldorff, Jim Hoft, Dr. Jayanta Bhattacharya, and Jill Hines ("Plaintiffs").[1]

This motion arises from Plaintiffs' lawsuit in the United States District Court for the Western District of Louisiana against President Joseph R. Biden, Jr. and 66 other individuals and entities of the U.S. government ("Defendants")—none of whom is Ms. Psaki.  Plaintiffs have alleged a wide-ranging, multi-year effort by the U.S. government to collude with social-media companies to suppress and censor speech in violation of the First Amendment.  On the basis of that lawsuit, Plaintiffs further sought a broad preliminary injunction against all federal government officials currently involved in such alleged conduct, and, in July 2022, obtained expedited, preliminary-injunction-related discovery to enable them, according to their filing, to identify all the members of this alleged conspiracy.  After Defendants provided responses to interrogatories and produced 15,000 pages of responsive documents, Plaintiffs increased the number of named defendants from 13 to the 67 individuals and agencies now being sued.

As part of the targeted discovery to identify all supposed members of the alleged conspiracy and seek certain other information, Plaintiffs further sought and received authorization in October 2022 to depose 10 current and former executive officials—including Ms. Psaki, a private citizen who served as the White House Press Secretary between January 2021 and May 2022.  But the information Plaintiffs purport to need from Ms. Psaki—primarily

---

[1] A copy of the Subpoena and its attachments is included as Exhibit 1 to this memorandum.

the identities of specific federal officials who corresponded with social-media companies and the nature of those communications—is information they have already obtained from Defendants through expedited discovery.  Nor have Plaintiffs shown that they cannot obtain any additional information they are authorized to seek from sources other than Ms. Psaki.

This court should quash the Subpoena because it is unduly burdensome.  The burdens of preparing and sitting for any wide-ranging deposition are significant, let alone the deposition of a former senior administration official.  And imposing that burden on Ms. Psaki, a nonparty private citizen, is entirely unwarranted on this record.  The proposed deposition is, at best, a fishing expedition to try to identify additional members of a conspiracy that Plaintiffs have merely alleged to exist, after they have already received extensive expedited discovery and although there exist alternate sources for that information.  And the proposed deposition, the scope of which Plaintiffs have not tried to limit in the Subpoena, also would allow Plaintiffs improperly to seek extensive discovery from Ms. Psaki about the merits of their underlying claims, before having to submit their motion for a preliminary injunction to any scrutiny, or to defend their complaint against a motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 2022 Plaintiffs sued President Biden, several U.S. government entities, including the Department of Homeland Security and the Cybersecurity and Infrastructure Security Agency, and various senior government officials in their official capacities, including Ms. Psaki in her official capacity as White House Press Secretary.  WDLA Dkt. 1 ¶¶ 15–27 (listing a total of 13 defendants).[2]  As relevant here, Plaintiffs alleged two claims—"Violation of

---

[2] "WDLA Dkt. __" refers to the corresponding docket entry in the underlying lawsuit, *State of Missouri* v. *Joseph R. Biden, Jr., et al.*, 22-CV-01213 (W.D.L.A. May 5, 2022).  For the Court's convenience, we have attached key filings to this memo.  The Second Amended Complaint (Dkt. 84) is attached as Exhibit 2, the parties' Joint Statement Regarding Witness Depositions (Dkt.

the First Amendment" and "Action in Excess of Statutory Authority"—arising from Defendants' supposed collusion with social-media platforms since 2020 to classify speech as misinformation and to censor content related to topics ranging from election integrity to the origins of and response to COVID-19.  *See id.* ¶¶ 3, 66–99, 241–265; WDLA Dkt. 90 at 2.

As to Ms. Psaki, Plaintiffs alleged that, as White House Press Secretary, she routinely made statements during press briefings that purportedly admitted to collusion between the administration and social-media platforms.  *See, e.g.*, WDLA Dkt. 1 ¶¶ 151–152.  Plaintiffs also alleged that Ms. Psaki "called on social-media companies to censor particular disfavored speakers," such as when she reiterated the following about Facebook's existing terms of service: "It's important to take faster action against harmful posts.  As you all know, information travels quite quickly on social-media platforms; sometimes it's not accurate.  And Facebook needs to move more quickly to remove harmful, violative posts—posts that will be within their policies for removal often remain up for days.  That's too long."  *Id.* at ¶ 159; WDLA Dkt. 86 at 15.

On May 13, 2022, Ms. Psaki stepped down from her position as White House Press Secretary and was replaced by Karine Jean-Pierre.  Declaration of Jennifer R. Psaki ("Decl.") ¶ 4; *see* WDLA Dkt. 86 at 15.

On June 14, 2022, approximately a year after the alleged violations began and forty days after filing suit, Plaintiffs moved for a preliminary injunction.  WDLA Dkt. 10 at 2.  They proposed that the district court enter an injunction in "three phrases," first enjoining "the most egregious of Defendants' practices, which include demanding or urging social-media companies, either overtly or covertly, to censor speakers, content, and viewpoint that the government

---

86) is Exhibit 3, and the district court's Order Regarding Witness Depositions (Dkt. 90) is attached as Exhibit 4.

disfavors" and then "grant[ing] expedited preliminary-injunction-related discovery to allow the states to discover the full details and scope of Defendants' social-media-censorship activities." WDLA Dkt. 15 at 57.  This discovery would help the court to "fashion more specific relief to prevent ongoing and future unlawful activity."  *Id.*

On June 17, Plaintiffs filed a separate motion to expedite "preliminary-injunction-related discovery on a limited basis" to identify "federal officials who are coordinating with social-media platforms on the suppression and censorship of online speech" and the nature of their communications.  WDLA Dkt. 18 at 1.  Almost a month later, on July 12, 2022, the district court granted the motion for expedited discovery.  *See* WDLA Dkt. 34 at 1.  Recognizing that "[e]xpedited discovery is not the norm," the court nevertheless found that Plaintiffs had shown good cause for limited discovery, reasoning that their request was tailored to seek evidence to prove the allegations in their pending motion for a preliminary injunction.  *Id.* at 9, 11–13.  The court allowed Plaintiffs to serve interrogatories and document requests on Defendants, as well as third-party subpoenas on five social-media platforms, "seeking the identity of federal officials" allegedly communicating with social-media platforms about censorship and the nature of those communications.  *Id.* at 13.  It left open the question of depositions for a later time.  *Id.* at 12.

On August 2, 2022, Plaintiffs filed an amended complaint that, among other things, removed Ms. Psaki, in her official capacity as White House Press Secretary, as a defendant and substituted Karine Jean-Pierre, in her official capacity as the new White House Press Secretary.  *See* WDLA Dkt. 45 ¶ 24.  Ms. Psaki was not named as a defendant in her individual capacity in the amended complaint.

As of August 31, 2022, Defendants had provided responses to numerous interrogatories and produced approximately 15,000 pages of responsive documents.  WDLA Dkt. 71 at 31;

5

WDLA Dkt. 86 at 40.  Based on these productions, Plaintiffs identified new individual and agency defendants, and sought expedited discovery against them too; the parties disputed this expansion of targeted discovery, as well as whether certain officials should be required to respond to interrogatories and production requests, whether Defendants should be required to identify federal officials and agencies outside of their own agencies who allegedly engaged in censorship, and whether Defendants should be allowed reciprocal discovery.  WDLA Dkt. 72 at 2.  The district court denied the request for expedited discovery as to new defendants, and denied out-of-agency discovery and discovery by Defendants, but it ordered current White House Press Secretary (Karine Jean-Pierre) to respond to interrogatories and document requests.  *Id.* at 3–9.

On October 6, 2022, Plaintiffs filed a Second Amended Complaint ("SAC") that named 67 defendant individuals and entities (up from 13 in the original complaint), including Karine Jean-Pierre, in her official capacity.  WDLA Dkt. 84 ¶¶ 26–93.  Ms. Psaki was, again, not named as a defendant.  As in the original complaint, the SAC alleged that Ms. Psaki had made several public, generalized statements purportedly admitting to collusion between the administration and social-media companies, such as:  "[W]e are in regular touch with these social-media platforms, and those engagements typically happen through members of our senior staff, but also members of our COVID-19 team, given . . . this is a big issue of misinformation, specifically on the pandemic."  *Id.* ¶ 225.  And Plaintiffs again asserted that Ms. Psaki's comments during press briefings, such as statements about the excessive time it sometimes took to remove posts violating social-media platforms' terms of service, were a call for those platforms to censor certain content.  *See, e.g.*, *Id.* ¶¶ 226, 233–37.

On October 14, 2022, Plaintiffs asked the district court for permission to depose "10 key officials"—eight current government employees and two former ones, including Ms. Psaki—

"who have participated directly in the massive 'Censorship Enterprise' of federal officials pressuring social-media platforms to censor" private speech.  WDLA Dkt. No. 86 at 2. According to Plaintiffs, the discovery authorized to date had "not provide[d] the full scope and nature of federal officials' communications with social-media platforms about censorship," in part because probative communications likely occurred orally, rather than in writing.  *Id.* at 2. As to Ms. Psaki, Plaintiffs argued that several discrete public statements she made in her capacity as White House Press Secretary show that she has personal knowledge about who participated in these conversations and that the interrogatory responses from Ms. Jean-Pierre did not adequately address Ms. Psaki's own knowledge.  *Id.* at 15–18.  They further argued that a deposition of Ms. Psaki would not intrude on the independence of the Executive Branch's decision-making process because Ms. Psaki herself "was not a decision-maker on these issues," but rather simply "announced the actions of the decision-makers from the White House Press Room." *Id.* at 37.  Further, according to Plaintiffs, [a]sking her to explain her statements, identify the senior members of the team and COVID-19 team, and identify any other White House contacts with social-media platforms is a minimal burden."  *Id.* at 37.

Defendants opposed, arguing that they had already identified the officials who had communicated with social-media platforms in the interrogatory responses and the more than 15,000 pages of documents, including correspondence between officials and social-media companies.  *See id.* at 43; *see, e.g.*, WDLA Dkt. 71 at 5, 407–411 (emails produced by Defendants cited in August 31, 2022 Joint Statement on Discovery Disputes).  They had also performed a search of Ms. Psaki's emails during her time as White House Press Secretary and found *no responsive documents*.  WDLA Dkt. 86 at 54.  Defendants explained that, in light of the information already provided, any further discovery would be unduly burdensome and

duplicative, straying far beyond the limited scope of discovery for the preliminary injunction motion. *See id.* at 43–44.  They further argued that Plaintiffs had not met the exceedingly high standard—a showing of "exceptional circumstances"—for deposing current and former high-ranking government officials.  *Id.* at 44–45, 51–52.

On October 21, 2022, the district court authorized Plaintiffs to take several depositions, including of Ms. Psaki.  For reasons that are unclear, the court referred to Ms. Psaki as "a Defendant in this case," although she was no longer a defendant, WDLA Dkt. 90 at 15, and its entire analysis for granting her deposition consisted of the following:

> [P]laintiffs have proven that Jennifer Psaki has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19.  The Court has considered that Psaki was a high-ranking official at the time that she made the statements at issue, especially as she served as the White House Press Secretary.  However, this rank does not mitigate the relevance and the need of her deposition as it relates to this case.  Any burden on Psaki is outweighed by the need to determine whether free speech has been suppressed.  Lastly, the Court has determined that there are substantive reasons for taking the deposition. Extraordinary circumstances are present. . . . Psaki has made a number of statements that are relevant to the Government's involvement in a number of social-media platforms' efforts to censor its users across the board for sharing information related to COVID-19.

*Id.* at 17–18.  Although the court stated that it considered "[a]ny burden on Psaki," Ms. Psaki was not a party to that proceeding, did not appear in that proceeding, and did not have the opportunity to present her own arguments about the burden of a deposition.  *Id.* at 18.

Plaintiffs then served a subpoena on Ms. Psaki that ordered her to testify in Arlington, Virginia on November 17, 2022.  *See* Ex. 1 at 1.  The subpoena did not at all define or limit the scope of the deposition.  Although not authorized by the Western District of Louisiana district court, the Subpoena also sought eight categories of documents from Ms. Psaki.  *Id.* at 8–10.  Some of the document requests are directed to specific statements made by Ms. Psaki, but one calls for "any Documents and Communications that relate to any member of the White House

8

Communications Team or any other Federal Official communicating with Social-Media Platforms about Content on those Platforms." *Id.* at 10.  Ms. Psaki will file objections to those document requests in due course, consistent with Federal Rule of Civil Procedure 45(d)(2)(B).

On October 28, Plaintiffs agreed to postpone the deposition until December 8, 2022, as part of an agreed-upon briefing schedule for this motion to quash.[3]  On November 1, 2022, Plaintiffs reissued the Subpoena; the new Subpoena is materially the same as the previous subpoena, except with a new date for the deposition.  As of the date of this motion, six months after Plaintiffs first sued the President and officials and agencies of the U.S. government, the Western District of Louisiana has still not ruled on the motion for a preliminary injunction, and no motion to dismiss has been filed.

## ARGUMENT

### I.    Legal Standard

Pursuant to Rule 45(d)(3)(A)(iv), the "court for the district where compliance is required must quash or modify a subpoena" that, among other prohibitions, "subjects a person to undue burden."  Thus, under Rule 45, a motion to quash a subpoena that requires compliance in the Eastern District of Virginia should be brought in the Eastern District of Virginia.

Whether a burden is undue depends on, among other things, the "(1) relevancy of the proposed testimony; (2) need for the testimony; (3) breadth of the subpoena; (4) availability of the testimony by other means; [and] (5) burden on the subpoenaed party in obeying the subpoena."  *Intelligent Verification Sys., LLC* v. *Microsoft Corp.*, No. 2:12CV525, 2014 WL 12544827, at *2 (E.D. Va. Jan. 9, 2014) (citing *Wiwa* v. *Royal Dutch Petroleum Co.*, 392 F.3d

---

[3] The parties will file a proposed order setting forth the agreed-upon briefing schedule, which notices a hearing for November 18, 2022, with Plaintiffs' opposition to this motion due on November 11, and any reply due on November 16.

812, 819 (5th Cir. 2004)).  A subpoena that is overbroad or seeks irrelevant information imposes an undue burden.  *Singletary* v. *Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) ("[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.").

When, as here, "a subpoena is directed to a nonparty, courts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally."  *Gilmore* v. *Jones*, 339 F.R.D. 111, 120 (W.D. Va. 2021) (internal quotation marks omitted).  In nonparty cases, courts scrutinize with extra care the burdens of compliance with the subpoena, the purported need for the information sought, and whether it is available via alternative means.  *Id.* ("[E]ven if they have information that falls within the scope of party discovery, nonparties should not be drawn into the parties' dispute without some good reason." (internal quotation marks omitted)); *see Cook* v. *Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012) (a "subpoena [that] seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time" is unduly burdensome). The party serving the subpoena "should be able to explain why it cannot obtain . . . comparable information . . . from one of the parties to the litigation—or, in appropriate cases, from other third parties."  *Gilmore*, 339 F.R.D. at 121.

Further, to protect the independence and orderly operations of the Executive Branch, depositions of current and former high-level officials are only authorized under "exceptional circumstances," such as when the official has "unique first-hand knowledge" that cannot be obtained elsewhere.  *Fed. Deposit Ins. Corp.* v. *Galan-Alvarez*, No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015).  The party seeking to subpoena a high-ranking official must show that the testimony sought is "unobtainable in any other way" and

"[e]xhaustion of all reasonable alternative sources." *In re U.S. Dep't of Educ.*, 25 F.4th 692, 704–05 (9th Cir. 2022).

## II.      Argument

This court should quash the Subpoena because it is unduly burdensome to Ms. Psaki. The time and effort required to prepare for a deposition—bearing in mind that Ms. Psaki is a nondefendant private party, and a former high-ranking government official—is entirely unwarranted given the procedural posture of the case, the purpose of the targeted preliminary-injunction-related discovery authorized in the underlying case, and the clearly available alternatives to secure the information that Plaintiffs purport to seek through her testimony. Further, Ms. Psaki joins in Defendants' motion to quash the subpoena, which we understand will be filed on this same docket, on the grounds that Plaintiffs have not demonstrated exceptional circumstances necessary to justify the deposition of a former high-ranking executive official.

### A.      The Subpoena Is Unduly Burdensome

Complying with any deposition subpoena is burdensome and time consuming.  But the burdens inherent in complying with a subpoena are heightened when the deponent is a nonparty who has no stake in the litigation, and include "overbreadth, and invasion of privacy and confidentiality interests of both the subpoena recipients and others who might be affected." *Gilmore*, 339 F.R.D at 125 (citing *Virginia Dep't of Corr.* v. *Jordan*, 921 F.3d 180, 189-90 (4th Cir. 2019) (internal quotation marks omitted)).  It is not clear whether the court in the Western District of Louisiana, which referred to Ms. Psaki as a "defendant," considered her status as a nonparty in analyzing the burden imposed on her, but that consideration is now squarely before this court.  *See* WDLA Dkt. 90 at 15.

Compliance with the nonparty Subpoena would be even more demanding for Ms. Psaki given her role as a former executive official.  Unlike in a typical civilian deposition, Ms. Psaki

must be prepared to field probing questions about her observations and decisions during her

tenure as White House Press Secretary, and she must also be prepared to do so with attention to

the limitations of her testimony and which of her conversations or recollections might be subject

to executive privilege.  This requires extensive preparation not just with Ms. Psaki's own

counsel, but also with the government and its counsel.  These efforts would be further

complicated by the fact that she no longer possesses relevant materials, such as her White House

emails and documents, that would aid in her preparation.  Ms. Psaki has explained that

complying with the Subpoena and "devot[ing] several days to preparing for the deposition, as

well as attending the deposition itself" would "be highly disruptive to both [her] work and [her]

family."  (Decl. ¶ 5.)  In seeking the Subpoena, Plaintiffs merely dismissed the burden on Ms.

Psaki as "minimal," and did not address any of these sources of burden.  *See* WDLA Dkt. No. 86

at 37.

      Imposing this heavy burden on Ms. Psaki is entirely unwarranted on the record here.

      *First*, the Subpoena offers no limitations on the questions to be asked.  There is no

indication that Plaintiffs intend to limit their questioning to the scope of permitted discovery,

much less what Plaintiffs claimed to seek from Ms. Psaki in preliminary-injunction-related

discovery: "to explain her statements [as Press Secretary], identify the senior members of the

team and COVID-19 team [who interacted with social-media platforms], and identify any other

White House contacts with social media platforms."  WDLA Dkt. 86 at 37.  Ms. Psaki could

therefore be exposed to questions on any number of other topics related to her time as White

House Press Secretary.  *See Gilmore*, 339 F.R.D. at 120 (overbreadth is a "cognizable burden"

on a nonparty).  The inherent costs to a nonparty of sitting for any deposition—both material and

personal—are only exacerbated when a request provides no guideposts for a deponent as she prepares for and faces questioning.

*Second*, even if the scope of the Subpoena were limited, there would be no need for Ms. Psaki's testimony at all because Plaintiffs already have access to the information they purport to seek from her about the identities of federal officials communicating with social-media platforms and the nature of those communications, and can get any additional information from other sources.  *See* WDLA Dkt. 86 at 15.  A court considering the involuntary deposition of a nonparty must give "special weight" to the recipient's nonparty status, scrutinizing "not just the relevance of information sought, but the requesting party's need for it," and whether the "information is available to the requesting party from other sources."  *Virginia Dep't of Corr.*, 921 F.3d at 189. The requested information must also "offer some value over and above what the requesting party already has."  *Id.*; *accord Gilmore*, 339 F.R.D. at 120.

Here, Plaintiffs have alleged that certain statements made by Ms. Psaki during press briefings—such as, "we are in regular touch with these social media platforms . . . through members of our senior staff"—indicate that she had personal knowledge of the identities of the officials who communicated with social-media platforms and that Plaintiffs could determine who those officials were only by deposing her.  WDLA Dkt. 84 ¶ 225; WDLA Dkt. 86 at 15, 37.  But Defendants have already provided interrogatory responses to Plaintiffs about the identities of those officials and produced documents showing which officials communicated with social-media companies.

For example, when asked in an interrogatory who were the "members of our senior staff" Ms. Psaki was referring to in the above statement, Defendants identified several individuals. WDLA Dkt. 86, Ex. 3 at 77–78.  Plaintiffs also pointed to Ms. Psaki's statement, "[W]e engage

with them [i.e., Social-Media Platforms] regularly and they certainly understand what our asks are," and requested that Defendants identify to which platforms she was referring and what the "asks" were.  *Id.* at 82.  Defendants responded that the social-media platforms included Facebook and YouTube, and pointed to Ms. Psaki's own statements immediately preceding the quoted sentence where she explicitly described the "proposed changes" (*i.e.*, the "asks") that executive officials shared with social-media companies—providing data about the reach of COVID-19, "mov[ing] more quickly to remove" posts that violate the platforms' policies, and "promot[ing] quality information sources in their feed algorithm."  *Id.* at 77, 84.

In addition to these interrogatory responses, Defendants produced over 15,000 pages of documents, including emails with social-media companies, which themselves show the identities of officials who corresponded with those companies and reveal the content of those communications.  *See, e.g.*, WDLA Dkt. 71 at 407–411; *see* WDLA Dkt. 86 at 43 ("Depositions would not further illuminate the 'nature and content' of the very external communications produced by those within the scope of this Court's discovery order . . . .").  This discovery apparently helped Plaintiffs go from 13 named defendants in their original complaint to 67 in their second amended complaint in October 2022.  *See* WDLA Dkt. 71 at 30 (motion to file second amended complaint to add "newly identified federal officials and agencies, *whose identities have been revealed during the discovery process*" (emphasis added)).  Therefore, far from being necessary, Ms. Psaki's deposition would be needlessly cumulative and duplicative of already produced information.  *See Intelligent Verification Sys., LLC*, 2014 WL 12544827, at *1 (courts should limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

14

In light of the extensive information Plaintiffs have already received, there is no indication that Ms. Psaki can provide information of value beyond what Plaintiffs already have. Defendants have already conducted a search of Ms. Psaki's official emails and found no responsive documents about the topics at issue, consistent with the other record evidence showing that she is not a significant source of information.  WDLA Dkt. 86 at 54.  Plaintiffs themselves have argued that Ms. Psaki did not communicate directly with social-media companies, was not a "decision-maker" on these issues, and simply "announced the actions of [those] decision-makers from the White House Press Room . . . ."  WDLA Dkt. 86 at 36–37. And, to the extent Plaintiffs intend to explore internal White House communications in a deposition, those communications would likely be subject to assertions of executive privilege.

Moreover, even if Ms. Psaki had some additional information about the identities of officials who communicated with social-media groups that was somehow responsive to the scope of preliminary-injunction-related discovery, Plaintiffs have not demonstrated that they "cannot obtain the same information, or comparable information that would also satisfy [their] needs," from sources other than a deposition of Ms. Psaki.  *Virginia Dep't of Corr.*, 921 F.3d at 189; *cf. In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.,* No. CV 3:16-MC-1, 2016 WL 1071016, at *9 (E.D. Va. Mar. 17, 2016) ("even a more narrowly tailored [nonparty] subpoena would still be inappropriate" where the "information could be obtained from some other source that is . . . less burdensome" (internal quotation marks omitted)).

*Third*, Plaintiffs have not come close to demonstrating the "exceptional circumstances" that are required to justify a deposition of a nonparty who is a former high-ranking government official.  *Galan-Alvarez*, 2015 WL 5602342, at *3 (party seeking to depose a high-ranking official must make a showing of exceptional circumstances); *Franklin Sav. Ass'n* v. *Ryan*, 922

F.2d 209, 211 (4th Cir. 1991); *see Alexander* v. *FBI*, 186 F.R.D. 1, 2 n.1 & 3 (D.D.C. 1998)

(White House Press Secretary considered a high-ranking official).  Courts have imposed that

high barrier to obtaining depositions of such officials in order to protect the independence of the

Executive Branch's decision-making process from invasive judicial scrutiny, and to ensure that

"otherwise upstanding individuals" are not discouraged from entering public service for fear of

being subject to "indiscriminate" and invasive questioning.  *Galan-Alvarez*, 2015 WL 5602342,

at *4.  This doctrine is "no less applicable to former officials than to current officials."  *Id.*;

*accord In re U.S. Dep't of Educ.*, 25 F.4th at 705 ("If allowed the minute [high-ranking officials]

leave office, overwhelming and unnecessary discovery could also discourage them from taking

that office in the first place or leaving office when there is controversy.").

It is therefore "the rarest of cases" in which "exceptional circumstances can be shown" to

justify a deposition "where the testimony is available from an alternate witness."  *In Re Bryant*,

745 F. App'x 215, 220 (5th Cir. 2018), as revised (Nov. 30, 2018) (quoting *In re F.D.I.C.*, 58

F.3d 1055, 1062 (5th Cir. 1995)); *see also In re United States*, 985 F.2d 510, 512 (11th Cir.

1993).  Such a deposition should only be entertained where, for example, the former official "has

unique first-hand knowledge related to the litigated claims or [where] the necessary information

cannot be obtained through other, less burdensome or intrusive means."  *Galan-Alvarez*, 2015

WL 5602342, at *3; *In re U.S. Dep't of Educ.*, 25 F.4th at 703 ("If the information is not

absolutely needed for a case, we cannot allow a deposition to disrupt the normal governmental

balance of powers.").  "Exhaustion of all reasonable alternative sources is required" before

authorizing the deposition of a former high-ranking official.  *In re U.S. Dep't of Educ.*, 25 F.4th

at 704.

This is not the rare case where the nonparty deposition of a high-ranking official should be entertained.  The record reflects that Defendants have already provided relevant information and documents identifying officials who, unlike Ms. Psaki, were in contact with social-media companies, and setting forth the nature of those communications.  Moreover, as described above, Plaintiffs have not established that Ms. Psaki has insights about the identities of individuals whom Plaintiffs might want to target in their request for a preliminary injunction, or the nature of their communications with social-media companies, that are absolutely needed for that injunction and that cannot be obtained through any other means, including from other documents or individuals.  *See, e.g.*, *In Re Bryant*, 745 F. App'x at 221 (no "entitlement" to discovery from high-ranking officials merely because they have personal knowledge about an issue if "an alternative witness can provide the relevant information").  Thus Plaintiffs have not met their burden of showing that they have exhausted all reasonable alternative sources for additional information they seek.

For all of these reasons, there is no need for a nonparty deposition of Ms. Psaki, particularly in the context of purportedly narrow, preliminary-injunction-related discovery, and in the complete absence of exceptional circumstances that would justify deposing a former high-ranking official.  Any such deposition would be unduly burdensome.

**B.      Transfer to the Western District of Louisiana Would Be Unwarranted**

Although Rule 45(f) of the Federal Rules of Civil Procedure allows, in limited circumstances, the transfer of a motion to quash a subpoena otherwise properly before the district court in which the subpoena seeks a deposition, none of those circumstances are present here. Specifically, as a matter of discretion, the court of compliance may transfer a motion to quash "to the issuing court," if "the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  To the extent that Plaintiffs seek to transfer

this matter to the Western District of Louisiana, Ms. Psaki does not consent.  Furthermore, there are no exceptional circumstances that could overcome Rule 45's "presumption that subpoena-related disputes be litigated in the district designated for compliance." *Galan-Alvarez*, 2015 WL 5602342, at *3.

Exceptional circumstances may arise when the court issuing a subpoena is in a better position to rule on a motion to quash because of the "highly complex and intricate nature of the underlying litigation," or when transferring would help avoid inconsistent results, as when there are multiple subpoenas, raising similar issues, being challenged in multiple courts. *Id.*  No such circumstances exist here.  The core issues presented—whether the Subpoena is overbroad and whether a nonparty, former government official should be compelled to testify given the extensive discovery already provided and the procedural posture—are "severable from the merits of the underlying litigation" and do not involve analysis or resolution of "highly complex" facts. *Id.*; *cf. XY, LLC* v. *Trans Ova Genetics*, L.C., 307 F.R.D. 10, 12–13 (D.D.C. 2014) (transferring motion to quash to issuing court in a complex patent action on the issue of relevance of certain evidence, and where requested documents were located in multiple jurisdictions).  Nor is there any risk of an inconsistent result if this Court resolves the motion to quash, because Ms. Psaki is the only nonparty, former official who has been subpoenaed in this case, and she has been served with only a single subpoena.

Moreover, even in evaluating whether exceptional circumstances exist, a court's "prime concern *should be avoiding burdens on local nonparties* subject to subpoenas . . . ."  Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments (emphasis added).  The burden on Ms. Psaki would be exacerbated, not avoided, by forcing her, a Virginia resident and nonparty in the

underlying litigation, to litigate the merits of this subpoena in Louisiana, far away from her home and work.  (*See* Decl. ¶ 3, 5.)  As a result, any request to transfer this motion should be denied.[4]

## CONCLUSION

For the foregoing reasons, Ms. Psaki respectfully submits that the Subpoena should be quashed.  *See* Fed. R. Civ. P. 45(d)(3)(A).

---

[4] As of November 2, 2022, no protective order governs discovery in the underlying litigation.  If this Court were to allow any form of deposition to proceed, Ms. Psaki respectfully requests that the Court enter a protective order limiting the use of the deposition to the underlying litigation, and restricting public filing or dissemination of any video clips or excerpts from the deposition.

Dated:  November 3, 2022

JENNIFER R. PSAKI

/s/  Edward E. Bagnell, Jr.
Edward E. Bagnell, Jr.  (VSB # 74647)
Email:  ebagnell@spottsfain.com
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA  23219
Tel. 804 697-2000
Fax: 804 697-2177

- and -

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP

Jeannie S. Rhee*
2001 K Street, N.W.
Washington, DC 20006
jrhee@paulweiss.com

David K. Kessler*
Muamera Hadzic
1285 Avenue of the Americas
New York, NY 10019
dkessler@paulweiss.com
mhadzic@paulweiss.com

*Attorneys for Movant Jennifer R. Psaki*

* Application for admission
*pro hac vice* pending

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of November, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served a copy by email to the following:

| | |
|---|---|
| D. John Sauer, Mo. Bar No. 58721<br>Solicitor General<br>Justin D. Smith, Mo. Bar No. 63253<br>First Assistant Attorney General<br>Todd Scott, Mo. Bar No. 56614<br>Senior Counsel<br>Michael E. Talent, Mo. Bar No. 73339<br>Deputy Solicitor General<br>Missouri Attorney General's Office<br>Post Office Box 899<br>Jefferson City, MO 65102<br>Tel: (573) 751-8870<br>John.Sauer@ago.mo.gov<br>*Counsel for State of Missouri*<br><br>Jenin Younes<br>John J. Vecchione<br>New Civil Liberties Alliance<br>1225 19th Street N.W., Suite 450<br>Washington, DC 20036<br>Direct: (202) 918-6905<br>E-mail: jenin.younes@ncla.legal<br>*Counsel for Plaintiffs Dr. Jayanta*<br>*Bhattacharya, Dr. Martin Kulldorff,*<br>*Dr. Aaron Kheriaty, and Jill Hines* | Elizabeth B. Murrill (La #20685)<br>Solicitor General<br>Louisiana Department of Justice<br>1885 N. Third Street<br>Baton Rouge, Louisiana 70804<br>Tel: (225) 326-6766<br>murrille@ag.louisiana.gov<br>*Counsel for State of Louisiana*<br><br><br>John C. Burns<br>Burns Law Firm<br>P.O. Box 191250<br>St. Louis, Missouri 63119<br>P: 314-329-5040<br>F: 314-282-8136<br>E-mail: john@burns-law-firm.com<br>*Counsel for Plaintiff Jim Hoft* |

By: /s/ Edward E. Bagnell, Jr.
Edward E. Bagnell, Jr. (VSB # 74647)
ebagnell@spottsfain.com
SPOTTS FAIN, P.C.
411 E. Franklin Street, Suite 600
Richmond, VA 23219
Telephone: (804) 697-2000
Facsimile: (804) 697-2100
*Counsel for Movant*