# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

**STATE OF MISSOURI ET AL**           **CASE NO. 3:22-CV-01213**

**VERSUS**                     **JUDGE TERRY A. DOUGHTY**

**JOSEPH R BIDEN JR ET AL**      **MAG. JUDGE KAYLA D. MCCLUSKY**

## MEMORANDUM ORDER
## REGARDING WITNESS DEPOSITIONS

This Court granted [Doc. No. 34] Plaintiffs' Motion for Expedited Preliminary Injunction-Related Discovery [Doc. No. 17] and set an expedited discovery schedule. The discovery schedule required the parties to meet and confer in good faith regarding any deposition requests. The parties were required to file a joint statement as to their position on depositions if they could not come to an agreement. The parties have done so and have submitted the pending Joint Statement Regarding Witness Depositions [Doc. No. 86]. This ruling addresses the witness depositions.

## I.     BACKGROUND

On May 5, 2022, Plaintiffs[1] filed a Complaint[2] against Defendants.[3] In the Complaint and Amended Complaint,[4] Plaintiffs allege Defendants have colluded with and/or coerced social media companies to suppress disfavored speakers, viewpoints, and content on social media platforms by labeling the content "dis-information," "mis-information," and "mal-information." Plaintiffs

---

[1] Plaintiffs consist of the State of Missouri, the State of Louisiana, Dr. Aaron Kheriaty, Dr. Martin Kulldorff, Jim Hoft, Dr. Jayanta Bhattacharya, and Jill Hines.

[2] [Doc. No. 1]

[3] Defendants consist of President Joseph R. Biden, Jr., Vivek H. Murthy, Xavier Becerra, Department of Health and Human Services, Dr. Anthony Fauci, National Institute of Allergy and Infectious Diseases, Centers for Disease Control & Prevention, Alejandro Mayorkas, Department of Homeland Security, Jen Easterly, Cybersecurity & Infrastructure Security Agency, and Nina Jankowicz, Karine Jean-Pierre, Carol Y. Crawford, Jennifer Shopkorn, U.S. Census Bureau, U. S. Department of Commerce, Robert Silvers, Samantha Vinograd and Gina McCarthy.

[4] [Doc. No. 45]

allege the suppression of disfavored speakers, viewpoints, and contents constitutes government action and violates Plaintiffs' freedom of speech in violation of the First Amendment to the United States Constitution. In the Complaint[5] and Amended Complaint[6] Plaintiffs set forth examples of suppression of free speech which include: 1) the Hunter Biden laptop story prior to the 2020 Presidential election; 2) speech about the lab leak theory of COVID-19's origin; 3) speech about the efficiency of masks and COVID-19 lockdowns; 4) speech about election integrity and the security of voting by mail; 5) censorship and suppression of speech by Plaintiffs Dr. Jayanta Bhattacharya and Dr. Aaron Kheriaty, co-authors of the Great Barrington Declaration; 6) censorship and suppression of Jim Hoft, owner of The Gateway Pundit, on social-media platforms; and 7) censorship and suppression of Jill Hines, co-director of Health Freedom Louisiana and Reopen Louisiana on social-media platforms.

Plaintiffs move for the following government officials to be deposed as a part of their limited preliminary injunction discovery. These are:

> (1) NIAID Director and White House Chief Medical Advisor Dr. Anthony Fauci, (2) Deputy Assistant to the President and Director of White House Digital Strategy Rob Flaherty, (3) former White House Senior COVID-19 Advisory Andrew Slavitt, (4) former White House Press Secretary Jennifer Psaki, (5) FBI Supervisory Special Agent Elvis Chan, (6) CISA Director Jen Easterly, (7) CISA official Lauren Protentis, (8) Surgeon General Vivek Murthy, (9) CDC Chief of the Digital Media Branch Carol Crawford, and (10) Acting Coordinator of the State Department's Global Engagement Center Daniel Kimmage.

Defendants oppose Plaintiffs' deposing of all of them.

---

[5] [Doc. No. 1]
[6] [Doc. No. 45]

## II.    APPLICABLE LAW

Expedited discovery is not the norm.  Courts only allow it in limited circumstances.  *Wilson v. Samson Contour Energy E&P, LLC*, 2014 WL 2949457 at 2 (W.D. La. 2014).  In the prior ruling,[7] which granted in part and denied in part Plaintiffs' request for expedited discovery, the Court employed a "good cause" analysis, which took into consideration such factors as the breadth of discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests, and how far in advance of the typical discovery process the request was made.  *GHX Industrial, LLC v. Servco Hose and Supply, LLC*, 2020 WL 1492920 (W.D. La. Feb. 5, 2020).

In addressing the necessity of depositions, the Court previously stated, "whether depositions will be taken will be addressed later."[8]  The party seeking expedited discovery has the burden of establishing that "the scope of the requests" is narrowly tailored to the necessary information sought.[9]  The Court must also consider the "burden on the defendants to comply with the requests."[10]

Top executive department officials should not, absent extraordinary circumstances, be called to testify regarding the reasons for taking official actions.  *In re Office of Inspector Gen. R.R. Ret. Bd.,* 933 F.2d 276, 278 (5th Cir. 1991).  Compelling the testimony of high-ranking government officials is justified only in "extraordinary instances."  *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.* 429 U.S. 252, 268 (1977).  This requirement is commonly referred to as the "apex doctrine."  *United States v. Newman,* 531 F. Supp. 3d 181, 188 (D.D.C. 2021).

---

[7] [Doc. No. 72]
[8] [Doc. No. 34 at 12]
[9] [Id., p. 2]
[10] [Id., p. 1]

The "extraordinary circumstances" limitation on the compelled testimony of high-ranking officials is necessary because such orders raise separation of powers concerns. *In re United States (Jackson),* 624 F.3d 1368, 1372 (11th Cir. 2010). Additionally, requiring high-ranking officials to appear for depositions also threatens to "disrupt the functioning of the Executive Branch." *In re Cheney,* 544 F.3d 311, 314 (D.C. Cir. 2008). High-level executives and government officials need some measure of protection from the courts because they are vulnerable to numerous, repetitive, harassing, and abusive depositions. *Asberry v. Sch. Bd. Of Pasco Cnty. Fla.,* 2019 WL 12383128 at 1 (M.D. Fla. Aug. 20, 2019). The general rule prohibiting depositions of high-ranking government officials also applies to former high-ranking officials. *In re United States (Bernanke)*, 542 F. App'x 944, 949 (Fed. Cir. 2013).

As a preliminary requirement for an "exceptional circumstances" analysis, the proponent of the deposition must show "that the official has first-hand knowledge related to the claims being litigated that is unobtainable from other sources." *In re Bryant*, 745 F. App'x 215, 218 n 2. (5th Cir. 2018). After the "first-hand knowledge" threshold is crossed in determining whether exceptional circumstances exist to warrant a deposition, a court must consider (1) the high-ranking status of the deponents; (2) the potential burden that the depositions would impose on them; and (3) the substantive reasons for taking the depositions. *Bryant,* 745 F. App'x at 220.

## A. Defendants' Opposition to Depositions

Defendants have objected to Plaintiffs' request to depose all ten government officials. Mainly, Defendants' objections are that Plaintiffs have not met their heavy burden of demonstrating that depositions are warranted at this stage because: (1) some of the officials sought to be deposed were not named in the Original Complaint and are outside of the Court-authorized expedited discovery; (2) Plaintiffs' have not demonstrated the "exceptional circumstances"

required for the depositions of high ranking officials; and (3) former officials could not be taken during the thirty-day time period due to the requirements in FED. R. CIV. P. 45.

Each proposed deponent must be examined to determine whether exceptional circumstances exist. Additionally, in its prior Ruling,[11] the Court did not allow additional interrogatories to Defendants added in the Amended Complaint[12] because of the compressed expedited discovery schedule. However, the Court did not intend to prohibit depositions of newly added Defendants, because they can be taken within the expedited discovery schedule.

As it relates to former government officials (i.e., Andrew Slavitt and Jennifer Psaki), FED. R. CIV. P. 45 does not prohibit depositions to be conducted within thirty days. Despite Defendants' threat to file a Motion to Quash the subpoenas, the Court finds that FRCP 45 requirements do not prohibit depositions being taken in a timely manner. Any depositions authorized by this Court of former government officials will have already taken into consideration the burden of the deponent. In the event that these depositions exceed the thirty-day restraint set out in FRCP 45, an extension may be warranted.

Defendants have essentially adopted the same arguments they made in their opposition to Plaintiffs conducting any form of discovery as it related to the preliminary injunction motion. While the Court agrees that obtaining the depositions of high-ranking officials such as the ones requested here is an exceptional circumstance, it will analyze each person that the Plaintiffs requested under the factors laid out in *Bryant*.

### B. Plaintiffs' Arguments

Plaintiffs argue that the depositions of the ten aforementioned officials are necessary for the following reasons.

---

[11] [Doc. No. 72]
[12] [Doc. No. 45]

### 1. Dr. Anthony Fauci—NIAID Director and White House Chief Medical Advisor

Dr. Anthony Fauci ("Dr. Fauci"), who is a Defendant in this case, is the Director of the National Institute of Allergy and Infectious Diseases (NIAID) and Chief Medical Advisor to the President. Plaintiffs move to depose Dr. Fauci for substantial reasons. The Court will discuss them all.

First, Plaintiffs claim that Dr. Fauci is directly involved with multiple social media censorship campaigns against COVID-19 misinformation. Plaintiffs argue that "speech backed by great scientific credibility and with enormous potential nationwide impact" that contradicted Dr. Fauci's views was censored on social media, and it was most likely censored because of the insistence of Dr. Fauci.

The first example of this is Dr. Fauci's efforts to discredit any theory that COVID-19 was the result of a "lab leak." Plaintiffs assert that "Dr. Fauci had funded risky 'gain-of-function' research at the Wuhan Institute of Virology through intermediaries such as EcoHealth Alliance, headed by Dr. Peter Daszak." Which in turn meant that if there were truth behind the lab-leak theory, "Dr. Fauci and Dr. Daszak could be potentially implicated in funding the research on viruses that caused the COVID-19 pandemic and killed millions of people worldwide." In late January and early February 2020, information on the lab-leak theory began to become spread to the public. Soon thereafter, Dr. Fauci participated in a conference call with scientists and science-funding authorities, which may or may not have been about discrediting the lab-leak theory. Plaintiff States assert that "After the conference call, influential individuals signed public statements that were placed in science journals in an attempt to discredit the lab-leak theory." During this time, Plaintiff States also urge that Dr. Fauci engaged in written and oral

communications with Mark Zuckerberg about the Government's COVID-19 response, and allegedly widespread social-media censorship of the lab-leak hypothesis ensued.

Plaintiffs further this argument by pointing out the publicly available emails between Drs. Fauci and Collins regarding their efforts to discredit the lab-leak theory, which Plaintiffs assert led to the censorship of the theory online. These emails indicate that Dr. Fauci and Dr. Collins were both aware of certain scientists' concerns that SARS-CoV-2 looked bioengineered. However, those same scientists authored a paper for Nature Medicine that discredited the lab-leak theory despite that three days earlier on February 1, they had advocated the theory to Dr. Fauci. That paper was also sent to Dr. Fauci for approval.

Plaintiffs allege that Dr. Fauci and Mark Zuckerberg commenced a course of friendly oral communications about the Government's COVID-19 response. Plaintiff States wish to ascertain the contents of these communications in depositions.

On April 16, 2020, Dr. Collins emailed Dr. Fauci a link to a Bret Baier article about the lab-leak theory, expressing concerns over whether "NIH" can help to take down the "very destructive conspiracy" that seems to be growing momentum. He further stated that he hoped the Nature Medicine article "would settle this" and asked what more "we" could do about it. One day after this email, which Plaintiff States argue clearly shows Dr. Collins requesting Dr. Fauci to use more public pressure to stop the theory from circulating, Dr. Fauci cited the Nature Medicine article while speaking from a podium at the White House.[13]

Plaintiffs next cite to Dr. Fauci and Dr. Collins communications regarding the Great Barrington Declaration, a scientific critique of the effects of prolonged lockdowns as a response

---

[13] This was one among many public statements Dr. Fauci made about the illegitimacy of the lab-leak theory.

to COVID-19 co-authored by Dr. Jay Bhattacharya and Dr. Martin Kulldorff, Plaintiffs in this case. Dr. Collins' email regarding the publication read:

> Hi Tony and Cliff, See: https://gbdeclaration.org/. This proposal from the three fringe epidemiologists who met with the Secretary seems to be getting a lot of attention – and even a co-signature from Nobel Prize winner Mike Leavitt at Stanford. There needs to be a quick and devastating published take-down of its premises. I don't see anything like that online yet – is it underway? Francis.[14]

In response, Dr. Fauci began making a series of public statements that were highly critical of the Great Barrington Declaration, describing it as "total nonsense" and "ridiculous."[15] "[T]he censorship of the Great Barrington Declaration and Plaintiffs Bhattacharya and Kulldorff [occurred] just after a senior HHS official called for a 'quick and devastating … take-down' of the Declaration" to Dr. Fauci.[16]

Plaintiffs next assert that Dr. Fauci was involved in Twitter's permanent suspension of the vaccine critic Alex Berenson ("Berenson"). Berenson's tweets consisted of science-based objections to the vaccinations of young, healthy persons, which became a target for Biden-Administration's censors. Plaintiff States argue that "Alex Berenson disclosed internal Twitter communications revealing that senior 'WH' officials including Andrew Slavitt specifically pressured Twitter to de-platform Berenson, an influential vaccine critic—which Twitter did."[17] Dr. Fauci publicly described Berenson's opinions on vaccines as "horrifying." President Biden followed Dr. Fauci's steps and made a statement that "They're killing people" by not censoring vaccine "misinformation," to which Twitter subsequently permanently suspended Berenson from

---

[14] [Doc. No. 45-3, ¶ 14].
[15] See, e.g., Jessie Hellmann, Fauci Blasts Herd Immunity Proposal Embraced by White House as 'Total Nonsense,' THE HILL (Oct. 15, 2020), at https://thehill.com/policy/healthcare/521220-fauci-blasts-herd-immunity-proposal-embraced-by-white-house-as-total/.
[16] [Doc. No. 84, ¶ 480].
[17] [Doc. No. 84, ¶ 345].

its platform.[18] On October 13, 2022, Berenson posted on Substack Twitter emails indicating that a board member of Pfizer pressured Twitter to de-platform Berenson.[19] In the emails, the Pfizer executive allegedly claimed that Berenson's speech should be censored because it posed a threat to the safety of Dr. Fauci. Which Plaintiffs argue creates an inference that there was collusion between White House official Andrew Slavitt and the Pfizer executive on this very point.

Government Defendants have submitted to Plaintiffs interrogatory responses on behalf of Dr. Fauci, asserting that he has had no direct communications with any social-media platforms regarding censorship.[20] Plaintiffs argue in turn that they should not be required to simply accept those blanket statements as they were submitted, and they argue three reasons why Dr. Fauci should be questioned under oath.

First, Plaintiffs assert that Dr. Fauci has refused to verify under oath his own interrogatory responses in violation of this Court's Order. The NIAID's responses were instead verified by Dr. Jill Harper, who was not named in the Complaint. Accordingly, Dr. Fauci has made no statements under oath regarding his communications with social-media platforms, which violates this Court's Order regarding the discovery that instructed Dr. Fauci to provide interrogatory responses.[21] The Court sees the importance of having Dr. Fauci make statements under oath as it relates to the issues of this matter.

Next, Plaintiffs argue that even if Dr. Fauci can prove he never communicated with social-media platforms about censorship, there are compelling reasons that suggest Dr. Fauci has acted through intermediaries, and acted on behalf of others, in procuring the social-media censorship of credible scientific opinions. Plaintiffs argue that even if Dr. Fauci acted indirectly or as an

---

[18] [Doc. No. 84, ¶ 347].
[19] See https://alexberenson.substack.com/p/pfizer-board-member-scott-gottlieb
[20] [Doc. No. 86-3, p. 24, 57].
[21] [Doc. No. 72, pp. 67].

intermediary on behalf of others, it is still relevant to Plaintiffs' preliminary injunction motion. The Court agrees.

Lastly, Plaintiffs argue that Dr. Fauci's credibility has been in question on matters related to supposed COVID-19 "misinformation" since 2020. Specifically, Plaintiffs state that Dr. Fauci has made public statements on the efficacy of masks, the percentage of the population needed for herd immunity, NIAID's funding of "gain-of-function" virus research in Wuhan, the lab-leak theory, and more. Plaintiffs urge that his comments on these important issues are relevant to the matter at hand and are further reasons why Dr. Fauci should be deposed. Plaintiffs assert that they should not be required to simply accept Dr. Fauci's "self-serving blanket denials" that were issued from someone other than himself at face value. The Court agrees.

After reviewing the Plaintiffs and the Defendants' arguments, the Court finds that Plaintiffs have proven that Dr. Fauci has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19. The Court has considered that Dr. Fauci is a high-ranking official, especially as he is the Director of the National Institute of Allergy and Infectious Diseases and Chief Medical Advisor to the President. The Court sees the only potential burden imposed on Dr. Fauci as a result of him being deposed is that of his time. However, the Court acknowledges that any person who is being deposed must sacrifice their time, and it does not see any burden imposed on Dr. Fauci that outweighs the Court's need for the information in order to make the most informative decision on the pending Motion for Preliminary Injunction filed by Plaintiffs. Finally, the Court is aware of a number of substantive reasons why Dr. Fauci's deposition should be taken. The first is the publicly available emails that prove that Dr. Fauci was communicating and acting as an intermediary for others in order to censor information from being shared across multiple social-media outlets. The second is that Dr. Fauci

has yet to give any statements under oath in this matter. The third is that the Court has no doubt that Dr. Fauci was engaging in communications with high-ranking social-media officials, which is extremely relevant in the matter at hand. Additionally, the crux of this case is the fundamental right of free speech. Any burden that may be imposed on Dr. Fauci is wholly outweighed by the importance of Plaintiffs' allegations of suppression of free speech. Accordingly, the Court finds that Plaintiffs have satisfied their burden of proving why a deposition of Dr. Anthony Fauci is necessary in this case, and exceptional circumstance are present. Accordingly, **IT IS ORDERED** that Dr. Anthony Fauci cooperate in the Plaintiffs' request to depose him for purposes of their preliminary injunction discovery.

### 2. Rob Flaherty—White House Director of Digital Strategy

Plaintiffs move to depose Rob Flaherty ("Flaherty"), who is the Director of Digital Strategy for the White House. Plaintiffs describe him as a "key official in the White House's pressure campaign on social-media companies to increase COVID-19 censorship and social-media companies' policies and responses to COVID-19 vaccine claims."[22] Flaherty is said to have had "extensive" oral meetings with social-media platforms, including Twitter, Meta and YouTube on vaccine hesitancy and combatting misinformation.

Plaintiffs allege that Flaherty consistently communicates with Meta's director of U.S. Public Policy through "Covid Insight Reports," which detail trends/posts by social-media users taken by Meta. Further, Plaintiffs allege that he has held meetings about Meta's platform to address misinformation and to curb vaccine hesitancy. Meta allegedly contacts Flaherty when Covid-19 vaccines are authorized for new groups of people, and they report on Meta's intentions to censor disfavored opinions about vaccine effectiveness for those new groups, all allegedly at the White

---

[22] [Doc. No. 86-5].

House's urging.[23] Plaintiffs argue that Flaherty has specific knowledge and information on Meta's attempts to censor the "Disinformation Dozen."[24][25] Further, Plaintiffs assert that Flaherty has led efforts for the White House to force Meta to explain "how big the [misinformation] problem is, what solutions you're implementing, and how effective they've been."[26] Further, Flaherty supposedly "pressured Meta by sending them an article about misinformation on Facebook with a subject line 'not sure what to say anymore.'" Flaherty also allegedly knows about the Biden Transition Team's efforts with Meta.[27] Defendants' interrogatory responses detailed that Flaherty participated in virtual meetings with social-media platforms, which Plaintiffs assert were about censorship.[28]

Plaintiffs maintain that deposing Flaherty is essential to this case as it would provide critical information on the White House's pressure campaign to social-media platforms against the "Disinformation Dozen" and other COVID-19 "misinformation" issues, especially as it relates to their leaning on social media companies after press reports were released regarding vaccines, and the White House's involvement over content-modulation policies instilled in Meta and Twitter in their efforts to remove "the most harmful COVID-19 misinformation."[29]

The Court finds that Plaintiffs have proven that Flaherty has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19. The Court has considered that Flaherty is a high-ranking official, especially as he serves as Director of Digital Strategy for the White House. Any burden imposed upon Flaherty is

---

[23] [Id. at 7268-89; 7250].
[24] Supposedly, there are a dozen accounts across social-media that spread the mass of "misinformation" on COVID-19. Government officials have taken to calling these accounts the "Disinformation Dozen".
[25] [Id. at 7322].
[26] [Id. at 7258–59; see also id. at 16279].
[27] [Id. at 16364, 16276].
[28] [Doc. No. 86-3, at 31].
[29] [Doc. No. 86-5, p. 7248-49, 16275].

outweighed by the need for Plaintiffs to determine whether the fundamental right of free speech has been abridged. Extraordinary circumstances are present to depose this high-ranking official. The substantive reasons for taking Flaherty's depositions are set out herein, and the Court finds the substantive reasons are overwhelming. For reasons further set out herein, Plaintiffs are allowed to depose either Rob Flaherty or Andrew Slavitt. Shall Plaintiffs notify Defendants of their intent to depose Rob Flaherty, **IT IS ORDERED** that Rob Flaherty cooperate with Plaintiffs' request to depose him.

### 3. Andrew Slavitt—White House Senior COVID-19 Advisor

Defendant Andrew Slavitt ("Slavitt") served as the White House's Senior COVID-19 Advisor. Slavitt allegedly "led the charge" for the White House in its campaign with social-media companies to increase the censorship of private speech as it related to COVID-19 through meetings and oral conversations with representatives of multiple social-media platforms. Plaintiffs assert that in Defendants' own documentary discovery, it is revealed that Slavitt received "Facebook bi-weekly covid content reports" from a senior Facebook executive in order for Slavitt to "oversee" Facebook's censorship.[30] Plaintiffs also argue that Slavitt specifically pressured Twitter to de-platform Alex Berenson. This was supposedly done in an oral meeting, so there is no official record of it.[31]

On April 21, 2022, a meeting invitation was sent to Slavitt, which stated:

> White House Staff will be briefed by Twitter on vaccine [misinformation] Twitter to cover trends seen generally around vaccine misinformation, the tangible effects seen from recent policy changes, what interventions are currently being implemented in addition to previous policy changes, and ways the White House (and our COVID experts) can partner in product work.[32]

---

[30] [Doc. No. 84, ¶ 343].
[31] [Doc. No. 84, ¶¶ 345-46.].
[32] [Id. ¶ 345].

The next day, internal Twitter messages reflected that Slavitt had posed "one really tough question about why Alex Berenson hasn't been kicked off the platform."[33]  Plaintiffs describe several other instances where Slavitt engaged in email exchanges with social-media executives that describe censorship of the platforms and the actions the platforms are taking to expand censorship for language they deemed to be "harmful."[34] One email in particular read:

> [O]n March 2, 2021, Meta sent an email assuring Slavitt, Flaherty, and Humphrey that the company is "[c]ombating vaccine misinformation and de-amplifying content that could contribute to vaccine hesitancy" by "improving the effectiveness of our existing enforcement systems (particularly focusing on entities that repeatedly post vaccine misinformation), mitigating viral content that could lead to vaccine hesitancy[.]"[35]

Plaintiffs maintain that Twitter and Meta's Facebook have identified Slavitt as a senior federal official whom they communicated about their efforts to "stop" the spread of alleged "misinformation" regarding COVID-19. Plaintiffs go on to assert that the White House has also identified Slavitt and Flaherty as senior White House Officials who were involved in communications with social-media platforms. Plaintiffs argue these communications centered on censorship.

Plaintiffs also cite to a podcast that Slavitt participated in, wherein he stated, "my time in the White House where I was charged with pushing organizations like Facebook from spewing misinformation."[36] Plaintiffs detail Slavitt's statements made on the podcast, wherein he states that he was "pushing" for the company (i.e., social-media platforms) to be "more responsible" for the

---

[33] [Id. ¶ 346].
[34] [Id. ¶¶ 354, 369].
[35] [Id. ¶ 375.]
[36] Is COVID Misinformation Killing People?, Published Jul 21, 2021, at https://omny.fm/shows/in-the-bubble/is-covid-misinformation-killing-people-with-facebo (audio 5:40)

information that was being spread on the platforms. Plaintiffs move to depose Slavitt because of his role as a "self-professed principal enforcer for online censorship."

The Court finds that Plaintiffs have proven that Andrew Slavitt has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19. The Court has considered that Slavitt is a former high-ranking official, especially as he served as the White House's Senior COVID-19 Advisor. Any burden imposed upon Slavitt is outweighed by Plaintiffs' allegations of suppression of free speech. Extraordinary circumstances are present. As the Court has stated, any person who is being deposed must sacrifice their time, and it does not see any burden imposed on Slavitt that outweighs the Court's need for the information in order to make the most informative decision on the pending Motion for Preliminary Injunction filed by Plaintiffs. Lastly, the Court has determined that there are substantive reasons for taking the deposition. As stated above, Slavitt was the White House's Senior COVID-19 Advisor. His role put him in a position that would grant him specific knowledge to the facts at issue. Slavitt's own description of his role on a podcast that he went on showed he has specific knowledge as it relates to these issues. His communications, actions, and orders to and between social-media platforms will be necessary for this Court to make its ruling. Accordingly, as stated above, because Flaherty and Slavitt were both White House officials, in an effort to narrowly tailor this expedited discovery, Plaintiffs are allowed to take the deposition of either Flaherty or Slavitt, but not both. Should Plaintiffs notify Defendants of a desire to depose Andrew Slavitt, **IT IS ORDERED** that Slavitt cooperate as to Plaintiffs' request to depose him.

### 4. Jennifer Psaki—Former White House Press Secretary

Jennifer Psaki (Psaki) is the former White House Press Secretary of President Biden. She is a Defendant in this case. Plaintiffs move to depose Psaki for a multitude of reasons. The most

pressing reason being that during her tenure as White House chief spokesperson, Psaki made a series of public statements that:

> (1) attested to her personal knowledge of the participation of high-level White House officials in pressuring social-media platforms, and (2) reinforced the public threats of adverse legal consequences to social-media platforms if they do not increase censorship of views disfavored by federal officials. Thus, she both admitted to knowledge of pressure to censor from federal officials and directly engaged in such pressure herself, in a highly impactful and visible fashion.[37]

Plaintiffs' Complaint details the statements Psaki made as they relate to these claims. For example, on May 5, 2021, Psaki stated at a White House press conference "the major platforms have a responsibility related to the health and safety of all Americans to stop amplifying untrustworthy content, disinformation, and misinformation, especially related to COVID-19, vaccinations, and elections."[38] Psaki stated at another press conference on July 15, 2021, that she administration is in "regular touch" with social-media platforms and that the engagements happen between "members of our senior staff" and "members of our COVID-19 team."[39] Psaki also often spoke of the "Disinformation Dozen" and stated that:

> All [12] of them remain active on Facebook, despite some even being banned on other platforms, including Facebook — ones that Facebook owns … Facebook needs to move more quickly to remove harmful, violative posts — posts that will be within their policies for removal often remain up for days. That's too long. The information spreads too quickly.[40]

---

[37] [Doc. No. 86, p. 15].
[38] White House, *Press Briefing by Press Secretary Jen Psaki and Secretary of Agriculture Tom Vilsack,* May 5, 2021, at https://www.whitehouse.gov/briefing-room/press-briefings/2021/05/05/press-briefing-by-press-secretary-jen-psaki-and-secretary-of-agriculture-tom-vilsack-may-5-2021/.
[39] [Doc. No. 86, p. 16].
[40] [Id.]

Psaki also called on social-media platforms for consistency in banning disfavored speakers, stating "You shouldn't be banned from one platform and not others."[41]

Plaintiffs further argue that along with these statements, Psaki also "demanded" "robust strategies" for social-media companies to enforce censorship of "harmful posts." On April 25, 2022, Psaki also stated that President Biden was concerned about social-media platforms and thought they should be held accountable for the harms caused by the spread of "disinformation." She maintained at this press briefing that certain officials within the White House and the Biden Administration maintained "regular" contact with social-media platforms.

Plaintiffs submitted interrogatories to Karine Jean-Pierre, who is Psaki's successor as White House Press Secretary, and asked questions regarding the social-media censorship and Psaki's knowledge of such. Defendants' response to the interrogatories was that they lacked knowledge of the basis of her statements on those issues because Psaki no longer works at the White House. The only relevant responses Defendants supplied in the interrogatories were that Rob Flaherty and Andrew Slavitt were involved in communications with social-media platforms. Plaintiffs move to depose Psaki because they have obtained no statements from Psaki about what her "actual knowledge" of these issues is. Plaintiffs state that they should be allowed to depose her to explore the basis of the "critical statements" alleged in the Complaint and stated above.

The Court finds that Plaintiffs have proven that Jennifer Psaki has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19. The Court has considered that Psaki was a high-ranking official at the time that she made the statements at issue, especially as she served as the White House Press Secretary.

---

[41] White House, *Press Briefing by Press Secretary Jen Psaki*, July 16, 2021, at
https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/16/press-briefing-by-press-secretary-jen-psaki-july-16-2021/.

However, this rank does not mitigate the relevance and the need of her deposition as it relates to this case. Any burden on Psaki is outweighed by the need to determine whether free speech has been suppressed. Lastly, the Court has determined that there are substantive reasons for taking the deposition. Extraordinary circumstances are present. As stated above, Psaki has made a number of statements that are relevant to the Government's involvement in a number of social-media platforms' efforts to censor its users across the board for sharing information related to COVID-19. Accordingly, **IT IS ORDERED** that Jennifer Psaki cooperate in the Plaintiffs' request to depose her for purposes of their preliminary injunction discovery.

### 5. Elvis Chan—FBI Supervisory Special Agent

Plaintiffs move to depose Elvis Chan ("Chan"), a named Defendant in this case and the FBI Supervisory Special Agent of Squad CY-1 in the San Francisco Division of the FBI.[42] Plaintiffs argue that Chan has "authority over cybersecurity issues for FBI in that geographical region, which includes the headquarters of major social-media platforms, and he plays a critical role for FBI in coordinating with social-media platforms relating to censorship and suppression of speech on their platforms."[43] Plaintiffs move to depose Chan because they assert he plays a central role in the federal government's suppression of social-media censorship.

In support of this argument, Plaintiffs cite to a podcast where Mark Zuckerberg stated that communications from the FBI led to Facebook censoring stories of the Hunter Biden Laptop.[44] Plaintiffs maintain that in response to their third-party subpoena, Meta's counsel identified Chan as the FBI agent who communicated with Facebook to suppress that story. Plaintiffs move to depose Chan because the Government has not provided documentary discovery with respect to

---

[42] [Doc. No. 84, ¶ 61].
[43] [Id.]
[44] [Doc. No. 86, p. 19].

Chan and because Chan has personal knowledge. They claim that his testimony is relevant and necessary to their preliminary injunction discovery motion.

The Court finds that Plaintiffs have established that Elvis Chan has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19. The Court has considered that Chan was a high-ranking official, especially as he served as the FBI Supervisory Special Agent. However, this rank does not mitigate the relevance and the need of his deposition as it relates to this case. Any burden imposed on Chan by being deposed is outweighed by the need to determine whether the First Amendment right of free speech has been suppressed. There are no burdens imposed on Chan outweighing the Court's need for the information in order to make the most informed decision on the pending Motion for Preliminary Injunction filed by Plaintiffs. Extraordinary circumstances are present here. Lastly, the Court has determined that there are substantive reasons for taking the deposition. As stated above, Chan was identified as the FBI Agent who communicated with Facebook to suppress a story about the Hunter Biden laptop. If he did this, the Court ultimately finds there are reasons to believe that he has interfered in other ways, too. Accordingly, **IT IS ORDERED** that Elvis Chan cooperate in the Plaintiffs' request to depose him for purposes of their preliminary injunction discovery.

### 6. Jen Easterly—CISA Director

Plaintiffs move to depose Jen Easterly ("Easterly"), the Director of CISA within the Department of Homeland Security, because she supervises the "nerve center" of federally directed censorship. Plaintiffs describe the CISA's central role as "directly flagging misinformation to social-media companies for censorship." Plaintiffs also assert that Easterly "claim[s] that social-media speech" by Americans "is a form of 'infrastructure,' and that policing speech online by the

federal government falls within her agency's mission to protect 'infrastructure,' stating that ... 'the most critical infrastructure is a cognitive infrastructure.'"[45]

Plaintiffs also cite to Easterly's text messages between Easterly and Matt Masterson, a former CISA agent who now works for a social-media platform.[46] Allegedly, these texts center around Easterly and Masterson discussing a "Disinformation Governance Board." The conversations ultimately describe how Easterly seeks greater censorship and that this would be done by federal pressure on social media platforms to increase censorship.

Plaintiffs move to depose Easterly for two reasons. First, they say that her role in the CISA as the director oversees the "nerve center" of the federal government's efforts to censor social-media users. They say that her text messages show that she has unique knowledge about the scope and nature of communications between CISA, DHS, and other federal officials. Second, Plaintiffs assert that in their response to interrogatories, CISA disclosed extensive oral communications and meetings between CISA officials and social-media platforms. No officials were actually identified by the CISA, but Plaintiffs believe that because of her role, Easterly would have detailed knowledge of what the CISA is disclosing. Plaintiffs state that her deposition would be their only chance of obtaining this information prior to addressing the preliminary injunction.

The Court finds that Easterly is a high-ranking official that has personal knowledge of relevant facts. Any burden imposed on Easterly is outweighed by the need to determine whether the First Amendment right of free speech was suppressed. Exceptional circumstances exist here. The substantive reasons for deposing Easterly are set forth herein. Because Easterly and Lauren Protentis both work for CISA, to narrowly tailor the relief sought, Plaintiffs are allowed to depose

---

[45] [Doc. No. 86, citing Doc. No. 84, ¶¶ 290-293, 301, 302, 291].
[46] [Doc. No. 71-5, p. 2-4].

either Easterly or Lauren Protentis, but not both. Should Plaintiffs notify Defendants of a desire to depose Jean Easterly, **IT IS ORDERED** that she cooperate with Plaintiffs' request to depose her.

### 7. Lauren Protentis[47]—CISA "Mis- Dis- and Mal-Information Team" Member

Plaintiffs move to depose Protentis because of her membership of the CISA Mis- Dis- and Mal-Information Team ("MDM Team"), whose mission is allegedly a federally induced censorship of social-media speech. The documentary discovery provided that Protentis was involved in the MDM Team and engaged in oral communications with executives of social-media platforms. Plaintiffs allege these communications were about censorship. Plaintiffs assert that Protentis is a "leader" and "expert" in the MDM Team's efforts to bridge a gap between the federal government and social-media companies to create a line of control over the censorship of social media.[48] Plaintiffs also argue that her contacts with these companies are so "pervasive," that oftentimes "very senior officials" in other departments ask her to introduce them to "points of contact."[49]

Plaintiffs ultimately conclude that Protentis serves as a vital connection between CISA and social-media platforms in the government's censorship efforts, has special knowledge in the election-security space, and provides briefings to the governments of foreign countries on how to interact with social-media companies. They assert that Protentis' testimony will establish context of the meetings, extent of CISA's election security efforts, tools that the government uses on social-media platforms, and efforts to influence election officials and encourage them to use social-media companies to censor voters ahead of the 2022 election.

---

[47] Defendants indicated that Protentis is on maternity leave, but they did not indicate when she would be returning.
[48] These include Twitter, Google, Microsoft, and Meta.
[49] [Doc. No. 86-6].

The Court finds that Plaintiffs have established that Protentis has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19. The Court has considered that Protentis is a high-ranking official because of her role as a MDM Team Member. The potential burden imposed on Protentis is outweighed by the need to determine whether First Amendment rights of free speech have been suppressed. Exceptional circumstances exist here. The Court finds that there are substantive reasons for taking Protentis' deposition. As stated above, Protentis served a vastly important role between the federal government and the social-media companies. Based on the description above, she served as a connection between these two conglomerates. This is relevant to the issues presented by Plaintiffs in their motion, and her deposition is important to the Court to make an informed determination. Because Easterly and Protentis both work for CISA, to narrowly tailor the relief sought, Plaintiffs are allowed to depose either Easterly or Lauren Protentis, but not both. Should Plaintiffs notify Defendants of a desire to depose Lauren Protentis, **IT IS ORDERED** that she cooperate with Plaintiffs' request to depose her.

### 8. Vivek Murthy—Surgeon General

Plaintiffs next move to depose Surgeon General Dr. Vivek Murthy ("Dr. Murthy") for his public campaign to censor individuals who spread "misinformation" about COVID-19. [Doc. No. 84]. Plaintiffs state that Dr. Murthy has also publicly criticized "tech companies" by asserting that they are responsible for COVID-19 deaths due to their failure to censor "misinformation." Plaintiffs also allege that Dr. Murthy issued a Request for Information (RFI) on March 2, 2022, requesting tech platforms to provide him with information about "misinformation," including the identities of those supposedly spreading it on their sites.[50] Plaintiffs assert that this, along with Dr.

---

[50] [Doc. No. 84, ¶¶ 243-46].

Murthy's other statements, as well as those of President Joseph Biden and Jen Psaki, this RFI "was an intimidation tactic, designed to frighten the tech companies into compliance with his demand to escalate censorship of certain viewpoints on Covid-19 for fear of reprisal in the form of regulation or other legal consequences."[51]

Plaintiffs urge that Dr. Murthy also engages in communications with high-level Facebook executives about the "demand" for greater censorship of COVID-19 "misinformation." Plaintiffs state that they obtained this information through texts and emails through discovery. These establish that Dr. Murthy was engaged in these communications and was even sent "reports" to obtain Dr. Murthy's opinions on censorship.

Plaintiffs move to depose Dr. Murthy because of his direct, routine contact with the senior Meta executive, and at least one phone call with him. He is the only individual in government privy to these conversations, and thus the only person who can therefore answer questions about the nature and degree of the conversations and clarify whether additional conversations on the topic were held over the phone or in virtual or in-person meetings.

The Court finds that Plaintiffs have established that Dr. Murthy has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19. The Court has considered that Dr. Murthy is a high-ranking official as he serves as Surgeon General. However, this rank does not mitigate the relevance and the need of his deposition as it relates to this case. Further, his actions went beyond the scope of this rank, and the Court finds that those actions must be addressed through a deposition. The potential burden imposed on Dr. Murthy is outweighed by the need to determine whether First Amendment rights of free speech have been suppressed. Exceptional circumstances are present. The Court finds that

---

[51] [Id. ¶ 243].

there are substantive reasons for taking the deposition. As stated above, Dr. Murthy made public statements about how the media companies' failure to censor its users related in COVID-19 deaths. These statements are extremely substantive to the nature of this suit. Accordingly, **IT IS ORDERED** that Dr. Vivek Murthy cooperate in the Plaintiffs' request to depose him for purposes of their preliminary injunction discovery.

### 9. Carol Y. Crawford—CDC's Chief of the Digital Media Branch

Plaintiffs move to depose Defendant Carol Crawford ("Crawford"), the Chief of the Digital Media Branch of the Division of Public Affairs within CDC, because she is allegedly among the government employees most involved in censoring "misinformation" about COVID-19. Plaintiffs state that she participated in emails with employees at Twitter, Meta, and Google/YouTube. Further, they state that she organized "Be on the Lookout" ("BOLO") meetings, which were essentially meetings that attempted to "quell the spread of misinformation" in 2021.[52] Plaintiffs claim that during these meetings, Crawford flagged certain social-media posts, provided examples of types of posts to censor, and urged the participants not to share the information exchanged in the BOLO meetings. She also worked with the Census Bureau in an effort to identify certain social-media users who were allegedly spreading misinformation about the vaccine. Emails from March of 2021 indicate that a meeting between the CDC (including Ms. Crawford), Census, and Google was held to discuss "COVID vaccine mis-info."[53]

Plaintiffs claim that Crawford's communications show that the CDC, the Census Bureau, and other government agencies collaborated with Facebook to censor speech on the platform. Plaintiffs claim that she has been involved in the "censorship enterprise" from the beginning of

---

[52] [Doc. No. 84].
[53] [Doc. No. 86-10].

the pandemic. Plaintiffs detail this by pointing out two phone calls Crawford engaged in with a Facebook employee.[54]

Plaintiffs move to depose Crawford because they claim that her email exchanges demonstrate that she played a key role in directing censorship on social-media platforms. Plaintiffs also suggest that her references to the role of the Census Bureau suggest that she would be able to shed light on that agency's role in efforts to flag "misinformation" the previous year, a topic about which little is known.

The Court finds that Plaintiffs have established that Crawford has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19. The Court has considered that Crawford is a high-ranking official because of her role as the CDC's Chief of the Digital Media Branch. This role, though, is vastly important to the issues at hand, and her rank does not mitigate the relevance and the need of her deposition as it relates to this case. The potential burden imposed on Crawford is outweighed by the need to determine whether First Amendment rights of free speech have been suppressed. Exceptional circumstances exist here. The Court finds that there are substantive reasons for taking the deposition. As stated above, Crawford organized meetings and engaged in a number of communications with social-media officials, and the contents of those meetings and communications are highly important for the issues presented by this case. Accordingly, **IT IS ORDERED** that Carol Crawford cooperate in the Plaintiffs' request to depose her for purposes of their preliminary injunction discovery.

---

[54] [Doc. No. 86-10].

### 10. Daniel Kimmage—State Department's Global Engagement Center Coordinator

Plaintiffs move to depose Daniel Kimmage ("Kimmage"), the Acting Coordinator for the Global Engagement Center ("GEC") at the State Department, because he allegedly works closely with Easterly and CISA to coordinate social-media censorship of speech on election-related issues and election integrity. Plaintiffs allege that in response to third-party subpoena, Twitter identified Kimmage as communicating with it about censorship and content modulation.[55] Allegedly, the purpose of the GEC is to facilitate coordination between the government and the tech sector to combat disinformation. Plaintiffs claim that the GEC works closely with the CISA on issues of censorship.

Plaintiffs claim that Kimmage's GEC collaborated with CISA in 2020 and 2022 to create and fund an alliance of third-party nonprofits called the "Election Integrity Partnership," which supposedly pushed for social-media censorship of free speech about elections in 2020 and continues to do so today in 2022.[56]

These are not the only CISA-GEC election-related censorship activities. Documents produced by LinkedIn demonstrate that Samaruddin K. Stewart, acting on behalf of Kimmage's Global Engagement Center in the State Department, organized repeated face-to-face meetings with LinkedIn and other social-media platforms to discuss censorship.[57] The nature and content of communications at these oral meetings about disinformation between Kimmage's representatives and social-media platforms has not been disclosed. Plaintiffs assert that the Defendants have provided no documentary discovery about Kimmage's GEC and its central role in federal

---

[55] [Doc. No. 84, ¶ 396].
[56] [Id. ¶ 401].
[57] [Doc. No. 84, ¶¶ 422-424].

censorship activities on election-related speech. They claim that Kimmage's deposition is crucial for this reason.

The Court finds that Plaintiffs have established that Kimmage has personal knowledge about the issue concerning censorship across social media as it related to COVID-19 and ancillary issues of COVID-19. The Court has considered that Kimmage is a high-ranking official because of his role as the Acting Coordinator for the Global Engagement Center at the State Department. This role, though, is vastly important to the issues at hand, and his rank does not mitigate the relevance and the need of his deposition as it relates to this case. The potential burden imposed on Kimmage is outweighed by the need to determine whether First Amendment rights of free speech have been suppressed. Exceptional circumstances exist here. The Court finds that there are substantive reasons for taking the deposition, as stated above. Accordingly, **IT IS ORDERED** that Daniel Kimmage cooperate in the Plaintiffs' request to depose him for purposes of their preliminary injunction discovery.

### III. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that to the extent that Plaintiffs move to depose the following parties, the request is **GRANTED:** NIAID Director and White House Chief Medical Advisor Dr. Anthony Fauci; Deputy Assistant to the President and Director of White House Digital Strategy Rob Flaherty **OR** former White House Senior COVID-19 Advisory Andrew Slavitt; former White House Press Secretary Jennifer Psaki; FBI Supervisory Special Agent Elvis Chan; CISA Director Jen Easterly **OR** CISA official Lauren Protentis; Surgeon General Vivek Murthy; CDC Chief of the Digital Media Branch Carol Crawford; and Acting Coordinator of the State Department's Global Engagement Center Daniel Kimmage.

MONROE, LOUISIANA, this 21st day of October 2022.

Terry A. Doughty
United States District Judge