# Exhibit C

NON-CONFIDENTIAL // REDACTED

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **The State of Missouri and the State of Louisiana,**<br><br>    *Plaintiffs,*<br><br>v.<br><br>**President Joseph R. Biden, Jr., in his official capacity as President of the United States of America,** *et. al.,*<br><br>    *Defendants.* | Civil Action No. 22-cv-1213 |

**DEFENDANTS' CORRECTED AMENDED COMBINED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF EXPEDITED PRELIMINARY-INJUNCTION RELATED INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the U.S. District Court for the Western District of Louisiana, Defendants, by and through counsel, provide the following combined objections and responses to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories ("Plaintiffs' First PI Interrogatories" or "Interrogatories") served on July 18, 2022 on the following Defendants: Dr. Anthony Fauci; Centers for Disease Control and Prevention ("CDC"); Surgeon General Vivek H. Murthy; U.S. Department of Health and Human Services ("HHS"); National Institute of Allergy and Infectious Diseases ("NIAID"); U.S. Department of Homeland Security ("DHS"); Cybersecurity and Infrastructure Security Agency ("CISA"); Jen Easterly, Director of CISA; Nina Jankowicz (former Executive Director of the DHS Disinformation Governance Board); and White House Press Secretary Karine Jean-Pierre (collectively, "Defendants"). Consistent with the agreement of the parties, Defendants have combined the objections and responses to address duplication of certain interrogatories among

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

Defendants but have addressed each interrogatory for each Defendant to which each interrogatory is directed. Defendants have amended these objections and responses in a manner consistent with the Court's September 6, 2022, Order (ECF No. 72).

Defendants' combined objections and responses are based on information known to Defendants at this time and are made without prejudice to additional objections should Defendants subsequently identify additional grounds for objection. The objections have been formulated in contemplation of Federal Rule of Civil Procedure 26(b)(1), which generally permits discovery of matters not privileged that may be relevant to the claims or defenses in a civil action. In presenting their objections, Defendants do not waive any further objection in pretrial motions practice or at trial to the admissibility of evidence on the grounds of relevance, materiality, privilege, competency, or any other appropriate ground.

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Defendants object to the definitions of "Content Modulation," and the related term "Misinformation," including to the extent that Plaintiffs' definition of "Content Modulation" covers actions by Social Media Companies *beyond* those taken against content containing Misinformation and against users posting content containing Misinformation (such as actions taken as to any post on "efficacy of COVID-19 restrictions" or on "security of voting by mail"). For purposes of these Responses and Objections, Defendants generally define "Misinformation" in a manner consistent with Plaintiffs' definition of that term: "any form of speech . . . considered to be potentially or actually incorrect, mistaken, false, misleading, lacking proper context, disfavored, having the tendency to deceive or mislead . . . including but not limited to any content or speech considered by any federal official or employee or Social-Media Platform to be 'misinformation,' 'disinformation,' 'malinformation,' 'MDM,' 'misinfo,' 'disinfo,' or

2

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

'malinfo.'" *See* Interrogatories, Definition O.

2.      Defendants object to the definitions of CDC, CISA, DHS, HHS, NIAID, and White House Communications Team to the extent those definitions include "any . . . agent," "contractors" and "any subordinate agency or entity" of those agencies on the ground that those definitions are overbroad and may include persons and entities that are not under the supervision or control of any Defendant. In particular, HHS and DHS also object to the extent any Interrogatory seeks a Department-wide response as unduly burdensome and disproportionate to the needs of the case. As the least burdensome sources of information consistent with Rules 26 and 33 that is potentially responsive to the Interrogatories, (i) DHS has identified its Headquarters (HQ), and (ii) HHS has identified the Office of the Surgeon General (OSG), NIAID, and CDC, and the four HHS employees identified in the Court's September 6, 2022 Order. Further, Defendant also objects to the definition of "White House Communications Team" for the additional reason that such a definition is not proportional to the needs of the case to the extent Plaintiffs seek information beyond the possession of the White House Office of the Press Secretary upon which Plaintiffs served Interrogatories.

3.      The individual Defendants Dr. Fauci, Dr. Murthy, Ms. Easterly, and Ms. Jean-Pierre, construe the Complaint and Amended Complaint as seeking relief against them each in their official capacity as head of agencies of various components of agencies or other offices of the Federal Government, including NIAID, HHS, CISA, and the Office of the White House Press Secretary, and, accordingly, each individual Defendant objects or responds to each Interrogatory exclusively through his or her corresponding agency Defendant. Individual Defendant Jankowicz has no successor in office, and the Disinformation Governance Board is paused. Moreover, DHS interprets any relief sought as against Ms. Jankowicz in her official capacity within DHS HQ,

3

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

and, accordingly, she objects or responds to each Interrogatory exclusively through DHS. Defendants object to any Interrogatory seeking from an individual Defendant a response that can be provided by that individual Defendant's corresponding agency in a manner that is less burdensome to Defendants and proportional to the needs of the case.

4.      Defendants object to the definition of "communication" to the extent it is meant to cover anything beyond e-mail exchanges, as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery now ongoing

5.      Defendants object to the definition of "document" to the extent it includes "documents retained on personal devices and/or in personal e-mail accounts or other personal accounts." Documents found on personal devices or within electronic personal accounts would not be in the custody or control of any Defendant. Defendants further object on the grounds that this definition is an unwarranted invasion of the privacy of non-parties and seeks information protected by the Privacy Act, 5 U.S.C. § 552a, et seq.

6.      Defendants object to the definition of "identify" to the extent it calls for disclosure of information covered by any applicable privilege or protection over, among other elements, a person's "email address, and present or last known address and telephone number

7.      Defendants object to the use of the undefined term "Meeting" in a manner incompatible with, and calculating to expand the obligations imposed by, the Government in the Sunshine Act, 5 U.S.C. 552b.

8.      Defendants object to the definition of "Social-Media Platform" as overbroad, because it includes "*any* organization that provides a service for public users to disseminate . . . content . . . to other users or the public," along with any "contractors, or any other person . . . acting on behalf of the Social-Media Platform . . . as well [as] subcontractors or entities used to

4

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

conduct fact-checking or any other activities relating to Content Modulation." Such a definition is overbroad because the Complaint (and the Amended Complaint) contains no nonconclusory allegation that Defendants communicated with each and every organization that allows users to "disseminate . . . content" to other users, along with any persons or entities affiliated with those organizations. Defendants will construe "Social-Media Platform" to encompass Facebook, Instagram, Twitter, LinkedIn, and YouTube.

9.      Defendants object to the definition of "You" an "Your" in each Interrogatory as overbroad, as it includes "any officers, officials, employees, agents, staff members, contractors, and other(s)" acting at the direction, or on behalf, of any Defendant served with any Interrogatory. Such a definition also is not proportional to the needs of the case, especially given the expedited, abbreviated discovery process in which Defendants have only a limited amount of time to respond to Plaintiffs' Interrogatories. Defendants interpret any Interrogatory relying on this definition as applying solely to the named Defendants upon whom the Interrogatory was served insofar as a response to such Interrogatory by such Defendant is consistent with Rules 26 and 33. In particular, Plaintiffs' allegations against each individual Defendant concerns actions taken in that individual's official capacity, and, accordingly, the agency Defendant corresponding to and that employed each individual Defendant is the proper party for objecting and responding to Plaintiffs' Interrogatories, as explained in Paragraphs 2 and 3 above.

10.     Defendant Jean-Pierre objects to the definition of "You" and "Your" as overbroad as it includes "any officers, officials, employees, agents, staff members, contractors, or other(s) acting at the direction of Jennifer Rene Psaki, in her official capacity as Press Secretary, or at the direction of her successor." Such a definition is not proportional to the needs of the case to the extent it is interpreted to extend beyond the Office of the White House Press Secretary, especially

5

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

given the expedited, abbreviated discovery process where Defendant has only a limited amount of time to conduct a document search and produce responsive documents. Defendant has interpreted this request as applying solely to the Office of the White House Press Secretary.

11.     Defendants object to Instruction 1. Plaintiffs cite to no authority requiring a Defendant to "describe the efforts [it has] made to locate . . . document[s]" that are not in its custody and control "and identify who has control of the document and its location."

12.     Defendants object to Instruction 2 to the extent it exceeds the requirements of Fed. R. Civ. P. 26(b)(6). Defendants specifically decline to produce privileged information. Defendants further object to any requirement that they produce a privilege log for privileged material not otherwise properly within the scope of discovery or as to which no privilege log would be required under Federal Rule of Civil Procedure 26(b)(5).

13.     Defendants object to Instruction 3. Plaintiffs cite to no authority indicating that, if Defendants object to an Interrogatory on burden grounds, Defendants must "stat[e] the approximate number of documents to be produced, the approximate number of person-hours to be incurred in the identification, and the estimated cost of responding to the request." Further, it is unclear how Defendants could provide that type of information without conducting certain burdensome searches and reviews that Defendants sought to avoid through their objections.

14.     Defendants object to Instruction 5 to the extent it requires Defendants to respond based on production of electronic documents "with all metadata and delivered in their original format." Plaintiffs may identify the precise categories of metadata they want Defendants' productions to contain, and Defendants can determine whether they can provide those categories of metadata without an undue burden.

15.     Defendants object to Instruction 6 to the extent that it requires Defendants to

6

NON-CONFIDENTIAL // REDACTED

respond based on production of documents in a format other than the format in which they are "kept in the usual course of business." Fed R. Civ. P. 34(b)(2)(E). Defendants object to Instruction 6 to the extent that it requests the production of all e-mail "forwards" for e-mails produced to Plaintiffs. That Instruction may call for the production of documents that are not found in the e-mail files of the relevant custodians used by Defendants.

16.    Defendant objects to Instruction 8, which applies these requests to the Office of the White House Press Secretary from January 1, 2020, to the present, as unduly broad. Ms. Psaki served as White House Press Secretary from January 20, 2021, until May 13, 2022, when Ms. Jean-Pierre became White House Press Secretary. Defendant interprets these requests as applying to when Ms. Psaki served as White House Press Secretary from January 20, 2021, through May 13, 2022, and when Ms. Jean-Pierre began serving as White House Press Secretary until the date the requests were served, i.e., from May 13, 2022, to July 18, 2022. Anything else would be disproportional to the needs of the case. Such disproportionality is further aggravated by the discovery burden being placed on White House officials. *See Cheney v. U.S. District Court*, 542 U.S. 367, 385 (2004).

**GENERAL OBJECTIONS APPLICABLE TO ALL INTERROGATORIES**

1.    The general objections set forth below apply to each and every Interrogatory discussed below. In asserting Defendants' objections to any particular Interrogatory, Defendants may assert an objection that is the same as, or substantially similar to, one or more of these objections. That Defendants may refer, with particularity, to some, but not all, of the general objections described immediately below in their objections to Plaintiffs' individual Interrogatories, does not indicate that Defendants have waived any of these general objections as to any of Plaintiffs' Interrogatories.

7

NON-CONFIDENTIAL // REDACTED

2.      Defendants object to any discovery taking place in this case to the extent Plaintiffs assert cognizable claims seeking review of governmental agency action, including claims under Administrative Procedure Act, because resolution of any such claims should be based upon the "administrative record" in this case. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). That said, Defendants understand that the Court has allowed preliminary-injunction-related expedited discovery to proceed. Thus, while preserving their broad objection to any and all discovery, Defendants make objections stated below in light of the current procedural posture of the case.

3.      Defendants object to each Interrogatory insofar as it is directed to any Defendant that is head of a Defendant agency as overly broad, unduly burdensome, and disproportional in light of the extraordinarily expedited discovery schedule in this case, given that Plaintiffs have not first sought the information from the agency itself, or through alternative, less burdensome means. *See* Fed. R. Civ. P. 26(b)(2)(C).

4.      Defendants object to each Interrogatory as overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint. Defendant agencies include numerous components and employ thousands of individuals. Any construction of an Interrogatory that would require a Defendant agency to furnish information held by all such individuals, or require a Defendant agency to furnish information held by non-party agencies of the Federal Government, would be massively burdensome and disproportional to the needs of

8

NON-CONFIDENTIAL // REDACTED

this case. Each Defendant agency will identify appropriate individuals within the agency who will review and respond to each Interrogatory. *See, e.g., In re Epipen*, MDL No. 2785, 2018 WL 1440923, at \*2 (D. Kan. Mar. 15, 2018) ("[T]he party responding to discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case.").

5.      Defendants object to the Interrogatories to the extent that they seek (a) attorney work product; (b) communications protected by the attorney-client privilege; (c) information protected by the deliberative process privilege or law enforcement privilege or other similar privilege; (d) material the disclosure of which would violate legitimate privacy interests and expectations of persons not party to this litigation; (e) information protected by any form of executive privilege; or (f) information covered by any other applicable privilege or protection.

6.      Defendants object to any Interrogatory seeking discovery from the White House as unduly burdensome, and disproportional to the needs of the case. *See generally Cheney*, 542 U.S. at 367. Plaintiffs' Interrogatories directed to White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See id.* at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Further, the Interrogatories seeking response from the White House are unduly burdensome and disproportional to the needs of the case when Plaintiffs have not first exhausted all available opportunities to seek related information from other sources. *See* Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019) (requiring plaintiff to exhaust all discovery on other defendants before considering whether there was "continuing need for discovery sought on the White House"); *cf. Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir.

NON-CONFIDENTIAL // REDACTED

2019) (vacating "district court's discovery orders because the district court did not fulfill its obligation 'to explore other avenues, short of forcing the Executive to invoke privilege'" (quoting *Cheney*, 542 U.S. at 390)). Notwithstanding this objection, Defendants have amended their responses in a manner consistent with the Court's September 6, 2022, Order.

7.      Moreover, to the extent any Interrogatory a response requires review of information involving White House personnel, it is inappropriate because it may have the effect of seeking information protected by the presidential communications privilege, a "presumptive privilege" "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution" that attaches to presidential communications. *United States v. Nixon*, 418 U.S. 683, 708 (1974); *see In re Sealed Case*, 121 F.3d 729, 743-44 (D.C. Cir. 1997). Although the presidential communications privilege can be overcome by showing a "specific need" in a criminal case, *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1112 (D.C. Cir. 2004), the presumption against disclosure is even higher in a civil case like this one, *Am Historical Ass'n v. Nat'l Archives & Records Admin.*, 402 F. Supp. 2d 171, 181 (D.D.C. 2005). Such discovery violates the separation of powers and creates an undue burden and distraction from those individuals' critical executive responsibilities. *See Cheney*, 542 U.S. at 389.

8.      Defendants object to each Interrogatory to the extent it seeks information or documents that are not in the custody or control of any Defendant.

9.      Defendants object to each Interrogatory to the extent it seeks responses based on all communications and documents from each Defendant relating to the substantive topic identified in the Interrogatory. The parties are currently involved in an expedited, abbreviated discovery process in which Defendants have only a limited amount of time to respond.

10.     Defendants specifically reserve the right to make further objections as necessary

10

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

to the extent additional issues arise regarding the meaning of and/or information sought by Plaintiffs' Interrogatories.

### PRELIMINARY STATEMENT REGARDING
### EXCESSIVELY NUMEROUS INTERROGATORIES

1.      Contrary to Fed. R. Civ. P. 33(a) and to LR33.1 of the Local Civil Rules, Plaintiffs erroneously and improperly served on July 18, 2022 First PI Interrogatories totaling 110 enumerated interrogatories as to 10 recipient Defendants. Even excluding duplicative interrogatories served on separate Defendants (at least in substance, if not form), there would still have been 34 distinct interrogatories.

2.      Either number exceeds the 25 interrogatories permitted by the Federal Rules of Civil Procedure. *Global Tubing, LLC v. Tenaris Coiled Tubes, LLC*, No. 17-cv-3299, 2020 WL 12443175 at *2 (S.D. Tex. Nov. 25, 2020) (quoting 8B Charles Alan Wright et al., *Federal Practice & Procedure* § 2168.1 (3d ed. 2020)); *accord Kleiman v. Wright*, No. 18-cv-80176, 2020 WL 1666787 at *1 (S.D. Fla. Apr. 3, 2020); *Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 664 (D. Colo. 2005); *see also Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006); *see, e.g.*, *Am. Council of Blind of Metro. Chi. v. Chi.*, No. 19-cv-6322, 2021 WL 5140475 at *1-2 (N.D. Ill. Nov. 4, 2021); *Fair Housing Ctr. of Centr. Ind. v. Welton*, No. 18-cv-01098, 2019 WL 2422594 at *5 (S.D. Ind. June 10, 2019). In a similar vein, LR33.1 of the Local Civil Rules, concerning "Number of Interrogatories," provides as follows (emphasis added): "No party shall serve on any other party *more than 25 interrogatories in the aggregate* without leave of court." Adherence to the 25-interrogatory limitation is especially appropriate at this stage of the instant action, where Defendants are already addressing extensive requests for production of documents ahead of the Rule 26 conference for the limited purpose of providing Plaintiffs with additional information concerning the already-filed application for a preliminary injunction. *Cf.*

11

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

*Gray v. Price*, No. 19-cv-10383, 2020 WL 12721645 at *5 (E.D. Mich. Feb. 12, 2020).

3.      After alerting Plaintiffs to this issue in an August 1, 2022, letter, and following additional e-mail correspondence with Plaintiffs, the parties agreed on August 11, 2022 to resolve the excessive numerosity problem as follows: Plaintiffs requested that (***a***) each Defendant recipient is to answer Interrogatories 1 through 5 of the First PI Interrogatories directed to CDC, with the reference to the CDC (in Interrogatory 1) to "be adjusted to refer to the recipient of the interrogatory," and (***b***) certain Defendants are to answer additional interrogatories, totaling 20, specified by Plaintiffs, and Plaintiffs did not object to Defendants' proposal that all remaining interrogatories be deemed withdrawn.

4.      Defendants have set forth more fully below their objections and responses to the 5 "Common" and 20 "additional" Interrogatories specified by Plaintiff on August 11, 2022, and preserve all other objections with respect to all other Interrogatories served on July 18, 2022 (the "Withdrawn Interrogatories"), to the extent they are not deemed withdrawn. In particular, Defendants object to those Interrogatories as exceeding the numerical limit in FRCP 33(a) and LR33.1 of the Local Civil Rules.

### SIGNATURES FOR RESPONSES

1.      Insofar as an Interrogatory is not objected to through the undersigned counsel, Defendants respond to them below, as amended and in accordance with the Court's September 6, 2022 Order, with the signatures of the following (attached):

    a.  For OSG: Max Lesko, Chief of Staff, OSG

    b.  For NIAID: Jill R. Harper, Ph.D., Deputy Director for Science Management and Executive Officer, NIAID

    c.  For CDC: Carol Crawford, Health Communications Specialist and Director,

12

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

Division of Digital Media, CDC

d.  For DHS: Samantha Vinograd, Acting Assistant Secretary of Homeland
    Security for Counterterrorism, Threat Prevention, and Law Enforcement
    Policy

e.  For CISA: Geoffrey Hale, Lead of Election Security & Resilience, CISA

f.  For the four HHS employees identified in the Court's September 6, 2022
    Order: Carol Maloney, Executive Officer/Deputy Agency Chief FOIA
    Officer, Office of the Assistant Secretary of Public Affairs

g.  For the White House Office of the Press Secretary: Robert E. Dornbush III,
    Chief of Staff and Special Assistant to the Press Secretary

h.  For Dr. Fauci, as Director of NIAID and Chief Medical Advisor to the
    President: Jill R. Harper, Ph.D., Deputy Director for Science Management and
    Executive Officer, NIAID

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

**Common Interrogatory No. 1:**

**"Identify every officer, official, employee, staff member, personnel, contractor, or
agent of" recipient Defendant "or any other federal official or agency who has communicated
or is communicating with any Social-Media Platform regarding Content Modulation and/or
Misinformation"**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants

further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the

needs of this case. This Interrogatory calls for identifying "personnel" or "contractor[s]" of any

Defendant or any employee or subordinate of any Defendant who have communicated with any

and all "Social-Media Platform[s]," even if those platforms are not at issue in the Complaint (or in

13

NON-CONFIDENTIAL // REDACTED

the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15,

NON-CONFIDENTIAL // REDACTED

2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Additionally, Defendants object to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2 and 3, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the "Social-Media Platforms" concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

this Interrogatory.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges. Defendants also object to the Interrogatory as overbroad and disproportional to the needs of the case to the extent it requests that responding agencies identify every individual who may have been included on any e-mail exchange, whether as sender or recipient or simply copied on the e-mail, between any Defendant and a social media company.

**RESPONSE:** Subject to and without waiving the above objections, Defendants provide the following responses, as amended in accordance with the Court's September 6, 2022 Order, by Defendants, HHS, NIAID, CDC, DHS, CISA, White House Office of the Press Secretary, and Dr. Fauci in his role as Chief Medical Advisor to the President.

**HHS:**

**Four HHS employees identified in the Court's September 6, 2022 Order:** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, HHS refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected are the following current and former HHS personnel, as required by the Court's September 6, 2022 Order:

- Joshua Peck, Deputy Assistant Secretary for Public Engagement, Office of the Assistant Secretary for Public Affairs (ASPA)

- Tericka Lambert, former Director of Digital Engagement, COVID-19 Public Education Campaign, ASPA

16

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

- Janell Muhammad, former Deputy Director, COVID-19 Public Education Campaign, ASPA[1]

- Christy Choi, Deputy Director, Office of Communications, Health Resources and Services Administration (HRSA)

**OSG**: Subject to and without waiving the above objections, OSG refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current and former OSG personnel:

- Dr. Vivek Murthy, U.S. Surgeon General

- Max Lesko, Chief of Staff

- Eric Waldo, Chief Engagement Officer for the U.S. Surgeon General

- Daniel Tartakovsky, Associate Director of Science and Policy

- Adam Beckman, Senior Advisor

- Ann Kim, Chief Innovation and Design Officer

- Kyla Fullenwider, Senior Advisor

**NIAID**: Subject to and without waiving the above objections, NIAID refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current NIAID personnel:

- Anthony S. Fauci, M.D., Director, NIAID

- Courtney Billet, Director, Office of Communications and Government Relations, NIAID

- Jennifer Routh, Scientific Communications Editor, News and Science Writing Branch, Office of Communications and Government Relations, NIAID

---

[1] As of November 2021, Ms. Muhammad has served a different role in a different component of HHS. Nevertheless, her emails through July 18, 2022, were collected and reviewed.

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

- Kathy Stover, Chief, News and Science Writing Branch, Office of Communications and Government Relations, NIAID

**CDC**: Subject to and without waiving the above objections, CDC refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current and former CDC personnel:

- Carol Crawford, Health Communications Specialist/Chief, Digital Media Branch
- Jay Dempsey, Health Communications Specialist
- Kate Galatas, Associate Deputy Director
- Ansley Hynes, Public Health Analyst
- Cynthia Jorgenson, Associate Director for Health Communications Science
- Tanya Hamburger, Health Communications Specialist
- Jessica Kolis, Health Communications Specialist
- Kathleen Layton, Health Communications Specialist
- Kristen Nordlund, Public Affairs Specialist
- Dagny Olivares, Supervisory Health Communications Specialist
- Jessica Schindelar, Health Communications Specialist
- Martha Sharan, Health Communications Specialist
- Lynn Sokler, Health Communications Specialist
- Dia Taylor, Deputy Chief Operating Officer
- Christopher Voegeli, Behavioral Scientist
- Elisabeth Wilhelm, Health Communications Specialist

**DHS**: Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, DHS refers to the documents being produced in response to Requests For Production 2 and 3, and states further that

18

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

the custodians whose e-mails were collected include the following current and former DHS
personnel:

- Nina Jankowicz, former Executive Director of the DHS Disinformation
  Governance Board
- Robert Silvers, Under Secretary of Homeland Security for Strategy, Policy, and
  Plans
- Samantha Vinograd, Acting Assistant Secretary of Homeland Security for
  Counterterrorism and Threat Prevention
- DHS 1 , former Assistant Secretary of Homeland Security for Counterterrorism
  and Threat Prevention
- DHS 2 , Director, Private Sector Engagement, Office of Intelligence
  and Analysis
- DHS 3 , Associate Director for Strategic Engagement, DHS Center for
  Prevention Programs and Partnerships
- DHS 4 , Acting Assistant Secretary of Homeland Security for Cyber,
  Infrastructure, Risk and Resilience
- DHS 5 , former Acting Assistant Secretary of Homeland Security for
  Counterterrorism and Threat Prevention

**CISA**: CISA has identified the following custodians as having relevant communications,
as produced in response to Requests For Production 2 and 3:

- Jen Easterly, Director, CISA
- Christopher Krebs, former Director, CISA
- Matthew Masterson, former Senior Election Lead, CISA

19

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

- Geoff Hale, Lead, Election Security and Resilience (ESR), National Risk Management Center (NRMC), CISA

- Brian Scully, Chief, Mis-, Dis-, and Malinformation (MDM) Team, NRMC, CISA

- Lauren Protentis, Engagements Lead, MDM Team, NRMC, CISA

In addition to the custodians identified above, CISA has identified the following current and former agency personnel as appearing in the communications produced in response to Plaintiffs' Requests For Production:

- <span style="background:black;color:red">CISA 1</span>, Resilience Lead, MDM Team, NRMC, CISA

- <span style="background:black;color:red">CISA 2</span>, Analysis and Response Lead, MDM Team, NRMC, CISA

- <span style="background:black;color:red">CISA 3</span>, Analyst, MDM Team, NRMC, CISA

- <span style="background:black;color:red">CISA 4</span>, former Analyst, Countering Foreign Influence Task Force (CFITF) (which was the predecessor to the MDM team), NRMC, CISA

**White House Office of the Press Secretary:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current and former White House Office of Press Secretary personnel:

- Jennifer Psaki, in her official capacity as White House Press Secretary from January 20, 2021 to May 13, 2022.

- Karine Jean-Pierre, White House Office of the Press Secretary

- Kevin Munoz, White House Office of the Press Secretary

20

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

**White House Chief Medical Advisor**:

- ▪ Dr. Fauci does not have a White House email address, and no one at the White House reports to him. Thus, there were no emails to search. Therefore, for responsive documents related to Dr. Fauci, Defendants direct Plaintiffs to any documents already produced in response to Plaintiffs' requests as served on Dr. Fauci in his capacity as Director of NIAID. Those documents were located after a reasonable search of Dr. Fauci's NIAID email account and were produced without regard to whether Dr. Fauci was acting in his capacity as Director of NIAID or Chief Medical Advisor to the President.

**Common Interrogatory No. 2:**

    **Identify all Communications with any Social-Media Platform relating to Content Modulation and/or Misinformation.**

    **OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for information from any Defendant or any employee or subordinate of any Defendant, to any and all "Social-Media Platform[s]," even if those platforms are not at issue in the Complaint (or in the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also understand this Interrogatory to seek only a response based on

21

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

forthcoming. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.

**RESPONSE:** Subject to and without waiving the above objections, Defendant CISA responds on behalf of Ms. Easterly, and refers to the response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d).


**Additional Interrogatory No. 17 (Ms. Jean-Pierre No. 6):**

Identify all "members of our senior staff" and/or "members of our COVID-19 team" who are "in regular touch with … social media platforms," as [Jennifer Psaki] stated at a White House press briefing on or around July 15, 2021, including the nature of the communication and/or coordination.

**OBJECTIONS:** Defendant incorporates by reference the above objections. Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further

74

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This

Request calls for a response based on *any and all* specified "communications" from Defendant or any

employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover

all possible responsive information under the current, abbreviated expedited discovery schedule.

Defendant also objects to this Interrogatory as overbroad because it calls for a response based on

documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery

authorized by the Court. The Court authorized the service of discovery requests concerning "the

identity of federal officials who have been and are communicating with social-media platforms about

[misinformation and] any censorship or suppression of speech on social media, including the nature

and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a

response based on communications with Social-Media Platforms regardless of whether they pertain

to content moderation with respect to misinformation. Defendant also objects to this Interrogatory to

the extent it seeks internal, deliberative documents discussing such communications, attorney client

documents, or other privileged materials relating to such communications. Defendants also object to

this Interrogatory to the extent it seeks information protected by the deliberative process privilege,

attorney-client privilege, law enforcement privilege, a statutory national security privilege,

presidential communications privilege, or any other applicable privilege. Additionally, challenges

to administrative agency action are ordinarily not subject to discovery outside the administrative

record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White

House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the

case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the

White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019);

75

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

*Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney,* 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this request to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary provides the following response:

At a July 15, 2021, press briefing, Ms. Psaki was asked the following question and provided the following response:

Q: Can you talk a little bit more about this request for tech companies to be more aggressive in policing misinformation? Has the administration been in touch with any of these companies and are there any actions that the federal government can take to ensure their cooperation, because we've seen, from the start, there's not a lot of action on some of these platforms.

MS. PSAKI: Well, first, we are in regular touch with these social media platforms, and those engagements typically happen through members of our senior staff, but also

76

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

members of our COVID-19 team, given, as Dr. Murthy conveyed, this is a big issue of misinformation, specifically on the pandemic.

In terms of actions, Alex, that we have taken — or we're working to take, I should say — from the federal government: We've increased disinformation research and tracking within the Surgeon General's office. We're flagging problematic posts for Facebook that spread disinformation. We're working with doctors and medical professionals to connect — to connect medical experts with popular — with popular — who are popular with their audiences with — with accurate information and boost trusted content. So we're helping get trusted content out there.

We also created the COVID-19 — the COVID Community Corps to get factual information into the hands of local messengers, and we're also investing, as you all have seen in the President's, the Vice President's, and Dr. Fauci's time in meeting with influencers who also have large reaches to a lot of these target audiences who can spread and share accurate information.

You saw an example of that yesterday. I believe that video will be out Fri- — tomorrow. I think that was your question, Steve, yesterday; I did a full follow-up there.

There are also proposed changes that we have made to social media platforms, including Facebook, and those specifically are four key steps.

One, that they measure and publicly share the impact of misinformation on their platform. Facebook should provide, publicly and transparently, data on the reach of COVID-19 — COVID vaccine misinformation. Not just engagement, but the reach of the misinformation and the audience that it's reaching.

That will help us ensure we're getting accurate information to people. This should be provided not just to researchers, but to the public so that the public knows and understands what is accurate and inaccurate.

Second, that we have recommended — proposed that they create a robust enforcement strategy that bridges their properties and provides transparency about the rules. So, about — I think this was a question asked before — there's about 12 people who are producing 65 percent of anti-vaccine misinformation on social media platforms. All of them remain active on Facebook, despite some even being banned on other platforms, including Facebook — ones that Facebook owns.

Third, it's important to take faster action against harmful posts. As you all know, information travels quite quickly on social media platforms; sometimes it's not accurate. And Facebook needs to move more quickly to remove harmful, violative posts — posts that will be within their policies for removal often remain up for days. That's too long. The information spreads too quickly.

77

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

Finally, we have proposed they promote quality information sources in their feed algorithm. Facebook has repeatedly shown that they have the levers to promote quality information. We've seen them effectively do this in their algorithm over low-quality information and they've chosen not to use it in this case. And that's certainly an area that would have an impact.

So, these are certainly the proposals. We engage with them regularly and they certainly understand what our asks are.

Press Briefing by Press Secretary Jen Psaki and Surgeon General Dr. Vivek H. Murthy, July 15, 2021, available at https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/15/press-briefing-by-press-secretary-jen-psaki-and-surgeon-general-dr-vivek-h-murthy-july-15-2021/.

It is the understanding of the White House Office of the Press Secretary ("the Office") that, in making this statement, Ms. Psaki was referencing the following individuals as "members of our senior staff" or "COVID-19 team" within the White House: Robert Flaherty and Andrew Slavitt.

With respect to the nature of the communications with social media platforms referenced in the July 15 press conference, the Office refers to the full statement quoted above. Ms. Psaki further conveyed her understanding of the nature of such communications in additional statements, including in press conferences on July 16, 2021, and July 19, 2021. Portions of those press conference are quoted below.

Q And just — you went through kind of the topline details of this yesterday, but can you elaborate a little bit on the Facebook —

MS. PSAKI: Sure.

Q — the administration to Facebook flagging of disinformation. And there's also some reporting that we've had that Facebook maybe hasn't been as proactive as the White House would like it to be in response to some of the flagging. So, the process of how the flagging works, and then whether Facebook has been amenable to those requests.

MS. PSAKI: Sure. Well, I would say first, it shouldn't come as any surprise that we're in regular touch with social media platforms — just like we're in regular touch with all of

78

NON-CONFIDENTIAL // REDACTED

you and your media outlets — about areas where we have concern, information that might be useful, information that may or may not be interesting to your viewers.

You all make decisions, just like the social media platforms make decisions, even though they're a private-sector company and different, but just as an example.

So we are ma- — regularly making sure social media platforms are aware of the latest narratives dangerous to public health that we and many other Americans seeing — are seeing across all of social and traditional media. And we work to engage with them to better understand the enforcement of social media platform policies.

So let me give you an example, just to illustrate it a little bit. The false narrative that remains active out there about COVID-19 vaccines causing infertility — something we've seen out there, flowing on the internet quite a bit, in other places as well — which has been disproven time and time again. This is troubling, but a persistent narrative that we and many have seen, and we want to know that the social media platforms are taking steps to address it. That is inaccurate, false information.

If you are a parent, you would look at that information and then that would naturally raise concerns, but it's inaccurate. And that is an example of the kind of information that we are flagging or raising.

Press Briefing by Press Secretary Jen Psaki, July 16, 2021, available at

https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/16/press-briefing-by-press-

secretary-jen-psaki-july-16-2021/.

Q Thank you. Will the White House publicly release information on posts that it considers misinformation on vaccines that it's asked Facebook to block?

MS. PSAKI: First of all, we've not asked Facebook to block any individual posts. The way this works is that there are trending — there are trends that are out there on social media platforms. You're aware of them. We're aware of them. Anyone in the public can be aware of them.

There's also data that we look at that many media platforms, like many of you, also look at data in terms of trends and you report on it, which is not — to be expected, given the number of people who get their information from social media.

It's up to social media platforms to determine what their application is of their own rules and regulations. And so we just certainly raise where we have concerns about information that's inaccurate that is traveling out there in whatever platform it's traveling on.

NON-CONFIDENTIAL // REDACTED

Press Briefing by Press Secretary Jen Psaki, July 19, 2021, available at https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/19/press-briefing-by-press-secretary-jen-psaki-july-19-2021/.

**Additional Interrogatory No. 18 (Ms. Jean-Pierre No. 7):**

Identify all Communications with any Social-Media Platform relating to "12 people who are producing 65 percent of the anti-vaccine misinformation on social-media platforms," as [Jennifer Psaki] stated at a White House press briefing on or around July 15, 2021.

**OBJECTIONS:** Defendant incorporates by reference the above objections. Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified documents from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendant also objects to this Interrogatory as overbroad because it calls for documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This

80

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

Interrogatory appears to call for a response based on communications with Social-Media Platforms regardless of whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit

81

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

(if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary provides the following response:

The White House Office of the Press Secretary ("the Office") is unaware of any such communications between employees of the Office and any social media platform that discuss this topic.

**Additional Interrogatory No. 19 (Ms. Jean-Pierre No. 8):**

On or around July 15, 2021, You stated that "we engage with them [i.e., Social-Media Platforms] regularly and they certainly understand what our asks are." Identify what Social-Media Platform(s) are included in any such engagement(s), and identify "what our asks are," including Communication(s) relating to such engagement(s) and ask(s).

**OBJECTIONS:** Defendant incorporates by reference the above objections. Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified documents from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive

NON-CONFIDENTIAL // REDACTED

search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendant also objects to this Interrogatory as overbroad because it calls for documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a response based on communications with Social-Media Platforms regardless of whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15,

NON-CONFIDENTIAL // REDACTED

2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary provides the following response:

It is the understanding of the White House Office of the Press Secretary (the "Office") that, in referring to individuals who "engaged with them [i.e., social-media platforms]," Ms. Psaki was not referring to employees of the Office. It is the understanding of the Office that the social media platforms referenced in this statement include, but are not necessarily limited to, Facebook and YouTube. With respect to "what our asks are," the Office refers to Ms. Psaki's statements, set

84

NON-CONFIDENTIAL // REDACTED

forth above in response to Interrogatory 17, in which she conveyed her understanding of the nature of the "engagement(s)" or "ask(s)." The Office is unaware of any communications between employees of the Office and any social media platform that discuss this topic.

**Additional Interrogatory No. 20 (Ms. Jean-Pierre No. 10):**

      **Identify all person(s) who "engage[s] regularly with all social media platforms about steps that can be taken" to address Misinformation on social media, which engagement "has continued, and … will continue," as You stated at the April 25, 2022 White House press briefing, including all Communications with any Social-Media Platform involved in such engagement.**

      **OBJECTIONS:** Defendant incorporates by reference the above objections. Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified documents from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendant also objects to this Interrogatory as overbroad because it calls for documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This

NON-CONFIDENTIAL // REDACTED

Interrogatory appears to call for a response based on communications with Social-Media Platforms regardless of whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendant also objects to this Request to the extent it seeks internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to such communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other

86

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary provides the following response:

At an April 25, 2022, press briefing, Ms. Psaki was asked the following questions and provided the following responses:

Q Jen, the Surgeon General has said that misinformation about COVID amounts to a public health crisis.

MS. PSAKI: Yeah.

Q I'm wondering: Regardless of ownership, would the White House be interested in working with Twitter like it has in the past to continue to combat this kind of misinformation? Or are we in a different part of the pandemic where that kind of partnership is no longer necessary?

MS. PSAKI: Well, I think we engage regularly with all social media platforms about steps that can be taken that has continued, and I'm sure it will continue. But there are also reforms that we think Congress could take and we would support taking, including reforming Section 230, enacting antitrust reforms, requiring more transparency. And the President is encouraged by the bipartisan support for — or engagement in those efforts.

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

Press Briefing by Press Secretary Jen Psaki, April 25, 2022, available at

https://www.whitehouse.gov/briefing-room/press-briefings/2022/04/25/press-briefing-by-press-

secretary-jen-psaki-april-25-2022/.

     The White House Office of the Press Secretary ("the Office") understands the

"engage[ments]" in this statement to refer to "engage[ments]" about COVID-19 misinformation.

Accordingly, the Office incorporates by reference its response to Interrogatory No. 17 above.

The Office is unaware of any communications between employees of the Office and any social

media platform that discuss this topic.

88

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

Dated: November 3, 2022            Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel, Federal Programs Branch

*/s/ Kyla Snow*
ADAM D. KIRSCHNER (IL Bar No. 6286601)
Senior Trial Counsel
KYLA SNOW (OH Bar No. 96662)
INDRANEEL SUR (D.C. Bar No. 978017)
KUNTAL CHOLERA (D.C. Bar No. 1031523)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Tel: (202) 514-3259
kyla.snow@usdoj.gov

*Attorneys for Defendants*

89

NON-CONFIDENTIAL // REDACTED

## **VERIFICATION**

I, Robert E. Dornbush III, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the interrogatory response of the Office of the Press Secretary to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 17-20, contained in the Responses of the Office of the Press Secretary, is true and correct, to the best of my knowledge.

Dated: September 27, 2022

Robert E. Dornbush III
Chief of Staff and Special Assistant to the Press Secretary
Office of the Press Secretary