# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| JENNIFER R. PSAKI<br><br>  Movant,<br><br>v.<br><br>STATE OF MISSOURI ex rel. ERIC S.<br>SCHMITT, Attorney General, et al.,<br><br>  Respondents. | No. 1:22-mc-00028-PTG-IDD<br><br>Underlying Action:<br>No. 3:22-cv-01213-TAD-KDM<br>(W.D. La.) |

**REPLY IN SUPPORT OF UNITED STATES' MOTION TO QUASH THIRD-PARTY SUBPOENA ISSUED TO JENNIFER PSAKI**

## INTRODUCTION

Plaintiffs in the underlying action have already received, on an expedited basis, thousands of pages of document discovery, and are now taking multiple depositions of federal officials from multiple agencies. Plaintiffs do not even contend that they *need* any more discovery to supplement their pending preliminary injunction motion. Nevertheless, Plaintiffs served a Rule 45 subpoena seeking even more discovery: a deposition of the former White House Press Secretary, Jennifer Psaki—a resident within this District who left that role just days after the commencement of the underlying action in May 2022—based on certain comments she made during news conferences in 2021 concerning communications that certain other government officials had with  social media companies about misinformation on their platforms.

But Plaintiffs' subpoena should be quashed under well-established standards readily applied here. Ms. Psaki is a nonparty to the underlying action in the Western District of Louisiana, and Fourth Circuit precedent teaches that her interests, including her interest in not becoming embroiled in that action, receive "special solicitude" under Rule 45. Moreover, the Plaintiffs— who challenge content moderation decisions by private social media companies under their longstanding platform policies and terms of service—have not satisfied the settled "extraordinary circumstances" doctrine. And Plaintiffs' Opposition (ECF 14, "Opp.") confirms their failure.

To start, Plaintiffs have no valid basis for asserting that Ms. Psaki has personal knowledge of government communications with private platforms about misinformation. And Plaintiffs' assertion disregards Defendants' uncontroverted representation that, although they produced, during expedited discovery, some 15,000 pages of e-mails between various agencies and the most prominent private platforms regarding misinformation, they found no such e-mails from Ms. Psaki to such platforms.  Although the district court that issued the subpoena pronounced, without discussing the overwhelming evidence to the contrary, that Ms. Psaki has "personal knowledge"

of "relevance" to the underlying action, the court improperly assumed that such knowledge can properly be inferred from Ms. Psaki's general statements concerning the activities of other government officials. The Fifth Circuit recently refused to allow the deposition of a state attorney general predicated on a similar assumption. *In re Paxton*, No. 22-50882, 2022 WL 16921697 at \*4-5 (5th Cir. Nov. 14, 2022). Indeed, if every official and former official were deemed to have unique personal knowledge based on public statements made in office—such as the statements Ms. Psaki made from the White House press room—then the "exceptional circumstances" test would be meaningless.

Furthermore, the issuing court did not address the key question whether available alternative sources of information or testimony would obviate the need for deposing Ms. Psaki, and Plaintiffs' efforts to fill that critical gap in their brief are unavailing. In addition to the 15,000 pages of e-mails Plaintiffs have received alongside federal agencies' written discovery responses, Plaintiffs have just taken the deposition of one senior federal official Plaintiffs depict as knowledgeable about agency contacts with private platforms regarding COVID-19 misinformation (the Chief of the Digital Media Branch at the Centers for Disease Control and Prevention (CDC)), and Plaintiffs are scheduled to take very soon the deposition of Dr. Anthony Fauci, Director of the National Institute of Allergy and Infectious Diseases and White House Chief Medical Advisor. Moreover, Defendants offered two additional senior federal officials (the Surgeon General's Chief of Staff, or a Senior Advisor to the Surgeon General and former Chief Engagement Officer in his office), but Plaintiffs declined that offer, and they do not attempt to explain what consequential facts they hope to obtain from Ms. Psaki that they could not get from the other depositions, actual or offered.

Further, although a deposition of Ms. Psaki, a former high-ranking White House official, presents serious separation of powers concerns, Plaintiffs have not disclaimed the possibility that they may ask questions calling for answers implicating executive privileges. Plaintiffs can demonstrate no "extraordinary circumstances" warranting a deposition of Ms. Psaki, much less the *expedited* deposition they demand to fit within the condensed discovery period the issuing court allowed for the purportedly limited purpose of allowing Plaintiffs to supplement their pending preliminary injunction motion.

In addition, the Court should deny transfer of the motions to quash. Ms. Psaki is a resident of this District and Rule 45 recognizes she has a strong interest in local resolution of the instant dispute. And the motions to quash do not present a rare case appropriate for transfer. The motions present a Rule 45 question addressed by well-established precedent, and the underlying action, which Plaintiffs describe as only "nascent"—where the issuing court has not resolved a motion to dismiss or any other motion on the merits—has not advanced so far as to require any special labor before this Court can understand the parties' arguments. The exceptional circumstances necessary to justify a rare transfer under Federal Rule of Civil Procedure 45(f) are thus missing here.

## ARGUMENT

### A.  The Issuing Court Did Not Decide This Rule 45 Dispute, And Plaintiffs Have Not Shown That Extraordinary Circumstances Justify The Deposition Of The Former White House Press Secretary

Plaintiffs' argument for the deposition has two somewhat related strands. *First*, Plaintiffs mischaracterize the instant motions to quash as seeking to "relitigate" an issue "already" decided (Opp. 3-4, 24) when the issuing court on October 21, 2022 granted Plaintiffs leave to take depositions during the PI-focused expedited discovery period. *Second*, Plaintiffs contend (Opp. 13-21) that they have shown "extraordinary circumstances" necessary to warrant the deposition of a former high-ranking government official—at once relying on the issuing court's order even while

3

attempting to fill in a rationale for the critical gaps in that decision. This Court should reject both strands of Plaintiffs' argument.

### 1. The Issuing Court Did Not Accord Ms. Psaki The "Special Solicitude" Rule 45 Requires For Her Protection As A Nonparty

The issuing court granted Plaintiffs leave to take depositions during the PI-focused expedited discovery period—"before the time specified in" Federal Rule of Civil Procedure 26(d). *See* Fed. R. Civ. P. 30(a)(2)(A)(iii). In granting leave, the issuing court did not apply Rule 45 as to Ms. Psaki. Nor could it have done so, because Ms. Psaki is not a party to the underlying action.

Fourth Circuit precedent requires protecting Ms. Psaki, a non-party in the underlying action, by according her "special solicitude": "Nonparties faced with civil discovery requests deserve special solicitude. They should not be drawn into the parties' dispute unless the need to include them outweighs the burdens of doing so, considering their nonparty status." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 194 (4th Cir. 2019). "This undue-burden analysis must be conducted based on the concrete facts and issues in the litigation, not on vague generalities or speculation." *Id.*; *accord Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) ("'concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs' in Rule 45 inquiry") (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)).

Plaintiffs cite *Jordan* (Opp. 9), but ignore the "special solicitude" requirement described in that decision. Plaintiffs misunderstand not only the governing legal standard, but also the limited import of the issuing court's order granting Plaintiffs leave to take depositions at this early stage. It is clear from that order that the issuing court did *not* purport to apply Rule 45, let alone to accord Ms. Psaki's interests the "special solicitude" Rule 45 requires for a non-party.

At the outset, the issuing court mistakenly referred to Ms. Psaki as a party to the underlying action (Dep. Order 15), and Plaintiffs cannot dispute that she was not. Rather, Ms. Psaki left the role of White House Press Secretary on May 13, 2022, and because Plaintiffs had named her in the original complaint in her official capacity, her successor in office, Karine Jean-Pierre, automatically substituted for Ms. Psaki in the action under Fed. R. Civ. P. 25(d).

In the section of the order concerning Ms. Psaki, the issuing court did not refer to Rule 45. Dep. Order 15-18. Instead, elsewhere in the opinion, the court noted that Ms. Psaki was a "former" official, and acknowledged that the court-imposed deposition schedule might have to be extended to accommodate ensuing Rule 45 subpoena proceedings (such as those concerning Ms. Psaki). Dep. Order 5.

In short, the issuing court could not require Ms. Psaki, a non-party with no ties to the Western District of Louisiana, to be deposed, nor did the issuing court purport to conduct a Rule 45 analysis.

### 2.  Extraordinary Circumstances Are Lacking

As explained (ECF 8 ("Mem.") at 11-24), the deposition Plaintiffs seek from the former White House Press Secretary about some of her public statements regarding governmental efforts to address misinformation concerning the COVID-19 pandemic is irreconcilable with precedent and with the separation of powers doctrine. *See In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015) (citing, *inter alia*, *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995)); *see also Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *U.S. Bd. of Parole v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973). Those decisions teach that "exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *Paxton*, 2022 WL 16921697 at *4 (quoting *In re Off. of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam)). "Before requiring such 'apex' testimony, courts must consider: (1) the deponent's high-

ranking status; (2) the substantive reasons for the deposition; and (3) the potential burden the deposition would impose on the deponent." *Id.* (quoting *FDIC*, 58 F.3d at 1060).

Plaintiffs nevertheless maintain (Opp. 15-16) that their need for Ms. Psaki's deposition—that is, the "substantive reasons" for it, *Paxton*, 2022 WL 16921697 at *4—follows from Ms. Psaki's public statements about discussions between federal officials and social media platforms regarding COVID-19 misinformation.  Plaintiffs mischaracterize Ms. Psaki's public statements as having "called for the censorship and de-platforming of specific speakers whose viewpoints the Government disfavors" (Opp. 3), purportedly implicating *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). And Plaintiffs echo the issuing court's unexplained conclusion that Ms. Psaki had "personal knowledge." Opp. 10. But Plaintiffs do not identify any statement by Ms. Psaki, or any other evidence, showing that Ms. Psaki ever communicated with platforms about "censor[ing] and de-platforming" any users. Ms. Psaki's statements concerned general, innocuous communications between other government officials and social media companies regarding COVID-19 misinformation. Furthermore, Plaintiffs do not address Defendants' representation that, after searching for e-mails between Ms. Psaki and the most prominent platforms about misinformation, Defendants found no e-mails with those social media companies. Mem. 6-9, 26.

Nor can Ms. Psaki's public statements during news conferences justify characterizing her knowledge as either personal or unique, given that her role as White House Press Secretary was to obtain information from other officials and convey that during news conferences. Mem. 18-19. The Fifth Circuit, in issuing a writ of mandamus to prohibit a deposition of the Texas attorney general, just underscored that point: The Fifth Circuit observed that the lower court there had improperly "treated" the attorney general "as having unique information merely because he made

public statements about a matter that later became the subject of litigation," which was wrong, in that his "personal 'thoughts and statements'" were of no legal consequence; indeed, the lower's court's "position," which is the same position Plaintiffs take here and echoed by the issuing court, "would *undermine* the exceptional circumstances test. It is *entirely unexceptional* for a public official to comment publicly about a matter of public concern. If doing so imparts unique knowledge, high-level officials will routinely have to testify." 2022 WL 16921697 at *4 (emphases added).

The Fifth Circuit also rejected the lower court's disregard for the burden a deposition would impose, adhering to the exceptional circumstances test by rejecting the notion that "if" the attorney general "has time to give public statements, he has time to testify." *Id.* at *5. "High ranking government officials," the Fifth Circuit stressed, "have greater duties and time constraints than other witnesses." *Id.* (quoting *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam)). "Those duties often involve communicating with the public on matters of public interest. The fact that a high-ranking official talks to his constituents does not *ipso facto* mean he also has ample free time for depositions." *Id. Paxton*'s teachings are highly instructive here, given that Ms. Psaki served as White House Press Secretary—a role requiring her to "communicat[e] with the public on matters of public interest"—and given also that the "exceptional circumstances" protects former high-ranking government officials (Mem. 12-13).

Moreover, although the instant motions present a procedural question about Ms. Psaki's deposition rather than the substantive question about Plaintiffs' claims, insofar as Plaintiffs' arguments for taking that deposition hinge on the assumption that they will prevail on the merits, that assumption is unwarranted. Plaintiffs' argument rests on inflammatory rhetoric that they substitute for Ms. Psaki's full statements. Plaintiffs assert that Ms. Psaki's public statements

implicate "censorship," but they identify no statement by Ms. Psaki that she, or any other government official, demanded that any platform "censor" any user. To the contrary: Ms. Psaki made clear that it is "Facebook and any private-sector company" that will "make[] decisions about what information should be *on their platform*." *See* Mem. 20-21 & n.4. Ms. Psaki's statements did not describe "censorship," including of the kind at issue in *Bantam Books*, which involved a "form of effective . . . regulation superimposed upon the State's criminal regulation of" disfavored content. 372 U.S. at 68-70. The discussions between platforms and the government that Ms. Psaki described thus did not transform the platforms' application of their *own* misinformation policies into state action limited by the Free Speech Clause of the First Amendment. *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (choice of private entity attributed to government only if government "'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the'" government).

In any event, even apart from Plaintiffs' errors regarding Ms. Psaki's public statements, they cannot show extraordinary circumstances warranting a deposition in light of available, less burdensome alternative sources.   Mem. 21-24. The issuing court did not address those alternatives. Dep. Order 17-18. The Fifth Circuit has just underscored that such an omission is impermissible: A "'*key* aspect' of the analysis 'is whether the sought after information can be obtained from other witnesses." *Paxton*, 2022 WL 16921697 at *4 (quoting *In re Bryant*, 745 F. App'x 215, 221 (5th Cir. 2018) (per curiam)) (emphasis added; alterations omitted).

For their part, Plaintiffs strain to fill the gap in the issuing court's order. Opp. 12-14. Overlooking the 15,000 pages of e-mails regarding misinformation that Defendants produced from various agencies (*including* those agencies whose efforts concern COVID-19

misinformation), Plaintiffs instead fault Defendants' written discovery responses for not providing more detail about Ms. Psaki's statements at the press conferences. But that misses the key point: Defendants did not find e-mails between Ms. Psaki and platforms concerning misinformation, Defendants' written discovery responses only confirmed that, and so the discovery materials Plaintiffs have amassed contain no basis for finding "extraordinary circumstances" here.

Although Plaintiffs assert that they seek Ms. Psaki's deposition because of her public statements about the Government's contacts with social media platforms regarding COVID-19 misinformation, Plaintiffs fail to explain why they cannot get information necessary to their preliminary injunction motion from *other* depositions that are going forward. In particular, Plaintiffs are scheduled to soon take the deposition of Dr. Anthony Fauci, Director of the National Institute of Allergy and Infectious Diseases and White House Chief Medical Advisor, and they have already taken the deposition of Carol Crawford, the Chief of the Digital Media Branch at the Centers for Disease Control and Prevention (CDC).

Nor do Plaintiffs bother to address Defendants' proposed alternative supervisory-level witnesses at the Office of the Surgeon General and the CDC. Defendants' proposal included Max Lesko, the Surgeon General's Chief of Staff; or Eric Waldo, a Senior Advisor to the Surgeon General and former Chief Engagement Officer in his office. Mem. 23. Those officials are witnesses who, *unlike* Ms. Psaki, participated in e-mail correspondence with platforms regarding misinformation, and who "had *greater* involvement in the day-to-day" COVID-19 misinformation discussions that Plaintiffs have portrayed as unlawful. *See FDIC v. Galan-Alvarez*, No. 15-mc-752, 2015 WL 5602342 at *5 (D.D.C. Sept. 4, 2015) (emphasis added) (quashing subpoena for former agency chair's deposition where requesting party chiefly relied

on her public statements, and asserted basis for deposition was "further weakened by" agency's proposal for depositions of "four other officials, all of whom had greater involvement in the day-to-day progress of" main events); *see also McCarthy*, 636 F. App'x at 144.

Furthermore, Plaintiffs err in brushing off (Opp. 19-20) the serious separation of powers concerns raised by the deposition they demand of the former White House Press Secretary. As explained (Mem. 16-17), the deposition risks intrusion into matters falling within executive privileges (such as the deliberative process privilege and the presidential communications privilege). Plaintiffs' vague assertion that "the focus of" their "inquiry is not internal discussions with White House officials, but the external communications between federal officials and social-media platforms" (Opp. 20) is not a commitment that Plaintiffs will not, at the deposition, ask questions calling for disclosure of privileged matter.

Moreover, the caution required as to the deposition of a former White House official based on *Cheney v. U.S. Dist. Ct for the Dist. of Columbia*, 542 U.S. 367 (2004) is not limited to discovery that raises privilege concerns. Rather, as *Cheney* explains, the Supreme Court has long recognized "the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties" (542 U.S. at 382), and has admonished courts "that the Executive's 'constitutional responsibilities and status [are] factors counseling judicial deference and restraint' in the conduct of litigation against it" (*id.* at 385). Although Ms. Psaki no longer works at the White House, that does not eliminate the separation of powers concern, which weighs further against the deposition of Ms. Psaki.

Just as the Fourth Circuit granted mandamus relief against the deposition of the EPA Administrator in *McCarthy*, and just as the Fifth Circuit granted mandamus relief against the deposition of a state attorney general in *Paxton*, this Court should quash the deposition for Ms.

Psaki's testimony here.

### B.  Transfer Is Not Warranted

Plaintiffs also do not meet their burden in showing (Opp. 21-28) that "exceptional circumstances" warrant transfer of this action to the Western District of Louisiana under Fed. R. Civ. P. 45(f). Plaintiffs cite portions of the advisory committee notes for the 2013 amendments to Rule 45(f), but they do not heed the pertinent guidance in full.

"The prime concern" in assessing a Rule 45(f) transfer motion," the advisory committee explained, "should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ .P. 45 (advisory committee note for 2013 amendments). The committee then observed that "transfer" sometimes "may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* But even then, "[t]ransfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

Plaintiffs' main argument for transfer, which is that the instant motions raise "issues [that] have already been . . . decided in the underlying action" (Opp. 24), is incorrect. As explained, the motions do not seek to "relitigate" a Rule 45 question previously decided. And given the incompleteness of the issuing court's order, it cannot be taken as having "decided" the central question in this subpoena dispute.  Point A, *supra*.

Plaintiffs' conclusory assertion that transfer is justified because the underlying action is "highly complicated and expedited, complex" (Opp. 21) also fails. As the District Court for the District of Columbia put it in a decision *denying* transfer of a motion to quash the deposition of the former chair of the Federal Deposit Insurance Corporation: The "legal and factual issues

presented by the motion to quash are *not particularly complex* and do not require deep familiarity with the underlying lawsuit." *Galan-Alvarez*, 2015 WL 5602342 at *1 (emphasis added). That is, "[r]uling on the motion to quash" for former government official testimony "does not necessitate wading into the merits or intricacies of" underlying "allegations." *Id.* at *3. Plaintiffs cite that case (Opp. 26), but it does not support their bid for transfer. As in *Galan-Alvarez*, decision on the motions to quash does not entail a "wad[e] into the merits" of Plaintiffs' claims, which in any event arise under federal laws this Court is fully capable of interpreting. Nor does the "duration of pendency" of the underlying action, which started fewer than seven months ago, impede this Court from becoming versed in the instant subpoena dispute; indeed, Plaintiffs themselves call the underlying action "nascent" (Opp. 26). *Cf. Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 47 (D.D.C. 2016) (pendency of underlying suit for "about 15 months, which is less than the duration of pendency that has weighed in favor of transfer in other cases," counted against transfer ultimately granted).[1] And the issuing court here thus not ruled on any motion to dismiss, or any other motion entailing determination of the "merits or intricacies of" underlying allegations. *Galan-Alvarez*, 2015 WL 5602342 at *3; *cf. UBS Fin. Servs.*, 113 F. Supp. 3d at 288 (transferring where underlying action was pending for more than three years, class certification was understood to be pending, and issuing court had ruled on motion to dismiss).

---

[1] Plaintiffs rely on several decisions granting Rule 45(f) transfers in substantial part because the underlying actions there were "complex" based on characteristics missing here: The underlying action here is not a putative class action. *Cf. Victim Servs., Inc. v. CFPB*, 298 F. Supp. 3d 26, 29 (D.D.C. 2018); *In re UBS Fin. Serv., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 287-88 (D.D.C. 2015). No motions to quash parallel to the instant motions are pending in other districts. *Cf. Google, Inc. v. Digital Citizens Alliance*, 15-mc-707, 2015 WL 4930979 at **3-4 (D.D.C. July 31, 2015). Nor is the issuing court coordinating discovery between the underlying action and any other federal action, and there are no related concurrent state court cases, as in *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 40 (D.D.C. 2014), where the subpoena sought testimony from a former national security officer of a *foreign* government—yet another facet of complexity missing here.

Plaintiffs' arguments thus boil down to a notion the advisory committee expressly *rejected* when it cautioned against the "assum[ption] that the issuing court is in a superior position to resolve subpoena-related motions." An issuing court will invariably be "more familiar with" the underlying litigation, but "that cannot be what Congress meant when it required a finding of exceptional circumstances, otherwise the exception would swallow the rule. As a general matter, a Rule 45 subpoena-related motion will always be resolved by a court less familiar with the underlying litigation." *Isola USA Corp. v. Taiwan Union Tech. Corp*., No. 15-mc-94003, 2015 WL 5934760 at *3 (D. Mass. June 18, 2015). Such an argument "would eviscerate the protection Rule 45 provides to local nonparties." *Id.*; *accord Cohen v. Group Health Inc.*, 22-mc-200, 2022 WL 4534552 at *3 (S.D.N.Y. Sept. 28, 2022).

Also mistaken is Plaintiffs' contention (Opp. 25) that the instant motions "would disrupt the balance struck" by the issuing court as to discovery "management" or pose "a risk of inconsistent rulings on depositions." Plaintiffs profess anxiety about the "tight [expedited] discovery timeline" (Opp. 24), but that cannot count in favor of transfer, given that the issuing court itself acknowledged that the proceedings stemming from a Rule 45 subpoena might require extending the current schedule. *See* Depo. Order 5 ("In the event that these depositions exceed the thirty-day restraint set out in FRCP 45, an extension may be warranted.").

Nor is the "risk of inconsistent rulings" between a decision by this Court and a decision by another court here anything other than conjectural. Ms. Psaki is the only former federal official whose deposition Plaintiffs have sought through subpoena. Neither the pending mandamus petition nor any other motion presents a challenge under Rule 45 (or other law) to Ms. Psaki's deposition. For its part, the mandamus petition does not seek relief as to Ms. Psaki. Rather, that petition concerns three current high-ranking federal officials (the Deputy Assistant to the President and

13

Director of White House Digital Strategy; the Director of CISA; and the Surgeon General). No. 22-30697 (5th Cir. filed October 28, 2022). Plaintiffs cannot show that a Rule 45 determination by this Court as to Ms. Psaki would "conflict with" (Opp. 25) a decision on the mandamus petition. So Plaintiffs are unable to offer even the "mere speculation that inconsistent rulings are *possible*"—which is insufficient to support transfer.  *In re Subpoenas Issued to Labatt Food Serv., LLC*, No. 21-mc-1242, 2022 WL 1000318 at *2-3 (W.D. Tex. Apr. 1, 2022).

Plaintiffs also fail to reconcile their arguments for transfer with what the advisory committee described as the "prime concern" of Rule 45(f) in "avoiding burdens on" the movant, here Ms. Psaki, the "nonparty served with the subpoena" who has a distinct "interest[] . . . in obtaining local resolution of" the instant motions. Plaintiffs have not attempted to show that Ms. Psaki has any connection to the Western District of Louisiana beyond the underlying action. In that regard, Plaintiffs entirely overlook that Ms. Psaki is a natural person. She is obviously *not* comparable to a government agency or corporation with routine litigation activity outside this District. By contrast, many of the decisions Plaintiffs cite concerned subpoenas directed to such entities, which sharply pared the need for "local resolution" of those disputes.[2]

Plaintiffs cannot overcome the "prime concern" of Rule 45(f) in "avoiding burdens on local nonparties subject to subpoenas," and this Court should deny the transfer request.

---

[2] *See Victim Servs.*, 298 F. Supp. 3d at 29 (agency had "substantial resources" and "regularly litigates" in state where underlying class action was pending); *Duck v. SEC*, 317 F.R.D. 321, 325-26 (D.D.C. 2016) (agency regional office was "just blocks away" from issuing court); *Fed. Home Loan Mortgage Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 44 (D.D.C. 2015) (agency "with nationwide jurisdiction" was "not the kind of 'local' party" Rule 45(f) "likely" protects); *UBS Fin. Servs.*, 113 F. Supp. 3d at 287-88 (agency's "national reach and familiarity with litigation in courts outside this jurisdiction" meant need for local resolution "is significantly reduced"); *cf. Flynn*, 216 F. Supp. 3d at 48-49 (transfer not unduly burdensome for "corporation [that] aimed at achieving coordination across a global industry that is represented by sophisticated counsel").

### C.  Defendants Have Properly Objected To Plaintiffs' Unauthorized Demand That Ms. Psaki Produce Documents

Defendants raised appropriate objections to the component of the subpoena to Ms. Psaki that demands that she produce documents from her time in office. Within the 14-day period provided by Rule 45(d), Defendants served on November 15, 2022 a letter objecting to Plaintiffs' subpoena insofar as it directs Ms. Psaki, in advance of her testimony, to produce any U.S. Government "documents, electronically stored information, or objects" of the kind described in the subpoena that Ms. Psaki may possess. That letter is attached as Exhibit A herewith. Resolution of Defendants' objections to the demand for documents alongside the resolution of the instant motions to quash the subpoena for Ms. Psaki's testimony would be appropriate.

First, the letter explained that the deadline for Plaintiffs to serve interrogatories and requests for production of documents in the underlying action passed on July 18, 2022. To respond to Plaintiffs' previous requests, Defendants searched Ms. Psaki's White House e-mails for external communications and found no responsive materials. Since then, the issuing court has not authorized additional document discovery.

Second, the letter explained that insofar as Plaintiffs seek relevant governmental communications—and Defendants have no reason to believe at this juncture that any such documents do exist in Ms. Psaki's possession—those requests are duplicative of the requests that Plaintiffs timely served on Defendants, and for which Defendants found no responsive communications with social media platforms.

Third, the letter states that insofar as Plaintiffs are seeking from Ms. Psaki internal Government communications—and Defendants has no reason to believe at this juncture that any such documents do exist in Ms. Psaki's possession—the Government objects to the extent that the

15

subpoena requests information protected by governmental privileges or requires Defendants to sift through mostly privileged records for responsive, non-privileged documents.

*     *     *     *     *

For the foregoing reasons and those stated in the opening memorandum, Defendants' Motion to Quash should be granted and Plaintiffs should be precluded from deposing Ms. Psaki.

Dated: November 16, 2022            Respectfully submitted,

                                    BRIAN M. BOYNTON
                                    *Principal Deputy Assistant Attorney General*

                                    JESSICA D. ABER
                                    *United States Attorney*

                                    JAMES J. GILLIGAN
                                    *Special Litigation Counsel, Federal Programs Branch*

                                    ADAM D. KIRSCHNER (IL Bar No. 6286601)
                                    *Senior Trial Counsel*
                                    KYLA SNOW (OH Bar No. 96662)
                                    INDRANEEL SUR (D.C. Bar No. 978017)
                                    AMANDA K. CHUZI (D.C. Bar No. 1738545)
                                    *Trial Attorneys*
                                    U.S. Department of Justice
                                    Civil Division, Federal Programs Branch
                                    1100 L Street, NW
                                    Washington D.C. 20005
                                    Tel: (202) 616-8448
                                    indraneel.sur@usdoj.gov

                                     /s/ *Lauren Wetzler*
                                    LAUREN A. WETZLER
                                    Chief, Civil Division
                                    Assistant United States Attorney
                                    2100 Jamieson Ave.
                                    Alexandria, VA 22314
                                    Tel: (703) 299-3752
                                    lauren.wetzler@usdoj.gov

                                    ATTORNEYS FOR UNITED STATES

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2022, I filed this document using the CM/ECF system, which will transmit a copy to the following counsel of record:

Jeff Philip Johnson
400 S. Phillips Avenue
Sioux Falls, SD 57104
571-217-1692
Email: jeff.johnson@ago.mo.gov

*Counsel for Respondent State of Missouri*

Michael Weitzner
Cooper & Kirk PLLC
1523 New Hampshire Ave NW
Washington, DC 20016
202-220-9669
Email: mweitzner@cooperkirk.com

*Counsel for Respondent State of Louisiana*

Jenin Younes
New Civil Liberties Alliance DC-NA)
1225 19th Streeet, Northwest
Suite 450
Washington, DC 20036
202-918-6905
Email: jenin.younes@ncla.legal

John Julian Vecchione
New Civil Liberties Alliance
1225 19th St. N.W.
Ste 450
Washington, DC 20036-2411
202-918-6902
Email: john.vecchione@ncla.legal

*Counsel for Respondents Jayanta Bhattacharya, Jill Hines, Jim Hoff, Aaron Kheriaty,*

David Kessler
Paul Weiss Rifkind Wharton & Garrison LLP (NA-NY)
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
Fax: 212-492-0614
Email: dkessler@paulweiss.com

Jeannie Rhee
Paul, Weiss, Rifkind, Wharton & Garrison LLP (DC-NA)
2001 K St NW
Washington, DC 20006-1047

202-223-7300
Fax: 202-330-5012
Email: jrhee@paulweiss.com

Edward Everett Bagnell , Jr
SPOTTS FAIN PC
411 E. Franklin Street, Suite 600, Richmond, VA 23219
Tel. 804 697-2000
ebagnell@spottsfain.com
*Counsel for Movant Jennifer R. Psaki*

/s/ *Lauren A. Wetzler*
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney