**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| JENNIFER R. PSAKI, | |
| Movant, | |
| v. | Misc. Case No. 1:22-mc-28 |
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, et al., | Underlying Case No.: 3:22-cv-01213 (W.D. La.) |
| Respondents. | |

**JENNIFER R. PSAKI'S REPLY TO RESPONDENTS' OPPOSITION TO HER MOTION
TO QUASH A SUBPOENA**

## PRELIMINARY STATEMENT

Plaintiffs' opposition to Jennifer R. Psaki's motion to quash the Subpoena issued in *Missouri, et al.* v. *Joseph R. Biden, Jr., et al.*, No. 3:22-cv-01213 (W.D. La. May 5, 2022) fails to demonstrate that any supposed need for her testimony to craft injunctive relief against the federal government could outweigh the significant burdens imposed on her of preparing and sitting for a deposition as a nonparty, former high-ranking official.  As result, the Subpoena should be quashed as unduly burdensome in light of Ms. Psaki's status a nonparty private citizen, the extensive information already available to Plaintiffs in the record, and Plaintiffs' access to numerous additional sources of information other than Ms. Psaki.  Furthermore, Plaintiffs have failed to meet their heavy burden for deposing a high-ranking former official under the apex doctrine.  They have not identified what unique, first-hand information Ms. Psaki—who, as White House Press Secretary, reported to the public about information she learned from others—can provide or that they have exhausted all reasonable alternative sources.

This court should also reject any effort to force Ms. Psaki to litigate this motion in the issuing court in the Western District of Louisiana because there are no exceptional circumstances justifying transfer.  This is the only court considering Ms. Psaki's arguments about the burden of a deposition on her as a nonparty, and the issues raised in this matter are severable and distinct from those raised by other deponents in the underlying action.  The Subpoena should be quashed.

I.      **The Subpoena imposes an undue burden on Ms. Psaki.**

The burdens of complying with this Subpoena are substantial given that Ms. Psaki is not a party to this litigation and has no stake in its outcome.  To comply with the Subpoena, Ms. Psaki must spend numerous days, away from her family and work, preparing for the deposition, with not just private counsel, but also with government attorneys, and more time attending it.

*See Gilmore* v. *Jones*, 339 F.R.D. 111, 120 (W.D. Va. 2021) ("excessive expenditure of time" can constitute an undue burden on a nonparty (quoting *Cook* v. *Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012)).  As made clear in the submission by the government, Ms. Psaki must exercise extraordinary care in preparing for and providing testimony that respects the bounds of executive privilege that arise from her prior position as White House Press Secretary.  *See* Def. Mem. at 13–17; *see also* Psaki Mem. at 11–12.  That is an undue burden and disruption in the life of a working parent with a full time job, who did not bring the underlying lawsuit and did not seek to be a part of it.[1]

Plaintiffs dismiss these burdens that will be imposed on Ms. Psaki, a nonparty to this litigation, as "just a burden," arguing that she has not made a specific factual showing of any undue burden.  Opp. Mem. at 4; *see also id.* at 11–12.  But whether the burden of complying with a subpoena is "undue" is a relative assessment in this context, which "requires the court to weigh a subpoena's benefits and burdens and consider whether the information is necessary and whether it is available from any other source."  *Intelligent Verification Sys., LLC* v. *Microsoft Corp.*, No. 2:12CV525, 2014 WL 12544827, at *1 (E.D. Va. Jan. 9, 2014) (quoting *Maxiena, Inc.* v. *Marks*, 289 F.R.D. 427, 439 (D. Md. 2012).  In this case, the burdens that Plaintiffs seek to impose on Ms. Psaki are entirely unwarranted when considered in light of her nonparty status, the lack of need for her testimony, and the availability of the information Plaintiffs seek by other

---

[1] It appears that the proposed deposition, which Plaintiffs intend to record by video, will also significantly intrude on Ms. Psaki's privacy interests.  Defendants have sought a protective order in the Western District of Louisiana that would prevent Plaintiffs from publicly disseminating audiovisual recordings from the deposition of witnesses, including of Ms. Psaki.  WDLA Dkt. 110 at 1.  Plaintiffs have urged that court to deny the motion for a protective order completely because of "the overwhelming interests in public access and public disclosure to the evidence and filings in this case."  WDLA Dkt. 114 at 1–2.  Plaintiffs' effort to file publicly audiovisual recording of Ms. Psaki, and their failure to suggest a compromise protective order, is completely unwarranted and further increases the burdens of compliance for Ms. Psaki.

means.  *See Gilmore*, 339 F.R.D. at 120 (requiring "special weight" be given to nonparty status).

In other words, the burden here is not outweighed by a countervailing need for Ms. Psaki's

nonparty testimony, making it undue.

Plaintiffs' alleged need for deposing Ms. Psaki is to identify federal officials who are in

contact with social-media companies, and the content of their communications, so that Plaintiffs

can seek to enjoin those officials who purportedly "censor Americans' online speech and the

methods by which they do so."  *See* Opp. Mem. at 3; *see also* WDLA Dkt. 18 at 3 ("A fully

effective preliminary injunction will not only enjoin Defendants in general terms from trampling

on free-speech rights on social media, but it will enjoin the specific actors most directly engaged

in such unlawful activity, and their specific unlawful conduct.").  But the record is clear that, to

the extent Plaintiffs are entitled to any more information on this issue, they do not need to get it

from Ms. Psaki.

*First*, Plaintiffs do not deny that they have already amassed, and continue to develop,

significant amounts of information about communications between the federal government and

social-media companies that can help them shape their requested injunction.  Defendants have

produced over 15,000 pages of documentary evidence, which includes the identities of federal

officials communicating with social-media companies and the nature of those communications.

*See* WDLA Dkt. 86 at 40, 43 (Defendants' statement about documentary evidence produced);

*see, e.g.*, WDLA Dkt. 71 at 407–411 (email correspondence produced).  Plaintiffs served third-

party subpoenas on Twitter, Facebook, Instagram, YouTube, and LinkedIn seeking the identities

of officials communicating with them about misinformation and the nature of those

communications, and Plaintiffs identified dozens of federal officials in contact with these

companies as a result.  *See* WDLA Dkt. 71 at 4–5.  And Plaintiffs are now in the process of

deposing several current officials who can provide direct information of the sort Plaintiffs seek to fashion injunctive relief. *See* WDLA Dkt. 90 at 27 (authorizing seven depositions of current officials as well as Ms. Psaki); WDLA Dkt. 104 (allowing depositions to proceed despite the pending mandamus proceedings). In light of this extensive information, Plaintiffs have not shown why a deposition of Ms. Psaki is necessary for them to propose an effective injunction to the Louisiana district court.

*Second*, Plaintiffs merely speculate based on her press briefings that Ms. Psaki can identify other federal officials and provide additional information about their communications. Defendants' amended interrogatory responses included responses from the current Press Secretary identifying which individuals Ms. Psaki was likely referring to in her statements about officials communicating with social-media companies. *See* WDLA Dkt. 86-3 at 77–79.[2] Although, as Plaintiffs note, the Press Secretary qualified her responses by stating her office could only speak to its own understanding of Ms. Psaki's statements, *see e.g.*, Opp. Mem. at 7–8, that itself is not a basis to assume there is more to learn or that Ms. Psaki herself can provide more.[3] There is no serious dispute that Ms. Psaki does not have first-hand information about

---

[2] Additional Interrogatory No. 17 (Ms. Jean-Pierre No. 6) requested Ms. Jean-Pierre to "Identify all 'members of our senior staff' and/or 'members of our COVID-19 team' who are 'in regular touch with … social media platforms,' as [Jennifer Psaki] stated at a White House press briefing on or around July 15, 2021, including the nature of the communication and/or coordination." WDLA Dkt. 86-3 at 74. Defendants amended their responses to include the following answer: "It is the understanding of the White House Office of the Press Secretary . . . that, in making this statement, Ms. Psaki was referencing the following individuals as 'members of our senior staff' or 'COVID-19 team' within the White House: Robert Flaherty and Andrew Slavitt." *Id.* at 77–78.

[3] Plaintiffs also assume, without any support, that there is some secret explanation for Ms. Psaki's self-explanatory statements. For example, when asked what Ms. Psaki meant by the term "asks" in the statement, "We engage with them [i.e., Social-Media Platforms] regularly and they certainly understand what our asks are," it was not enough for Plaintiffs that Defendants pointed to Ms. Psaki's own words during that briefing which outline four explicit proposals the

communications between federal officials and social-media companies:  By virtue of her role as Press Secretary, Ms. Psaki only received information to report to the public from other sources in the government, and, as Defendants acknowledge, did not herself communicate with social-media companies, *see* WDLA Dkt. 86 at 36.  Not only does Ms. Psaki's lack of first-hand information lessen the value of her testimony, but it also means that Defendants are able to base their responses on the same or similar sources that informed Ms. Psaki's talking points in the first place.  And Plaintiffs have the opportunity to depose at least one of the individuals that Defendants identified as having some first-hand knowledge to learn about their communications with social-media companies and to ask for the identities of others involved.  *See* WDLA Dkt. 90 at 27.  Plaintiffs also have access to those individuals' documents and communications through Defendants' document production.  *See, e.g.*, WDLA Dkt. 86 at 11–14.

In this context, there is limited utility in deposing Ms. Psaki, a secondhand source who is also over six months removed from her time with the government.  Any speculative benefit of her testimony is far outweighed by the burden of preparing and sitting for a deposition as a former government official.  Notably, Plaintiffs cite no comparable cases where a court has ordered the deposition of a nonparty, much less of a former high-ranking official, to elicit secondhand information that the requesting party merely speculates might be new.

*Third*, Plaintiffs also had available, but chose not to pursue, many other means by which to learn about the "who, what, and how" of communications between the government and social-media companies.  *See* Opp. Mem. at 13.  For example, Defendants offered to make available for deposition various federal officials who were most likely to have direct information about the

---

government made to social-media groups.  WDLA Dkt. 86-3 at 77–78, 84; *see* Opp. Mem. at 18. Plaintiffs cannot ignore obvious explanations as a way to demand further testimony.

government's communications with social-media companies on issues of COVID-19 and election security—such as the Chief of Staff to the Surgeon General and the Associate Director of Election Security and Resilience at the Cybersecurity and Infrastructure Security Agency. *See* WDLA Dkt. 86 at 62–63 (identifying five individuals); *see also* Def. Mem. at 23. These individuals were much more likely than Ms. Psaki to have the specific information that Plaintiffs seek to craft their injection. Nor did Plaintiffs seek depositions of any employees of the social-media companies with whom the purportedly improper communications occurred, or a Rule 30(b)(6) deposition of those companies to identify all communicants and the nature of their communications. Furthermore, if Plaintiffs' real goal was to identify all government employees communicating with social-media companies about alleged censorship, they could have sought a Rule 30(b)(6) deposition of relevant Executive offices or agencies. *Cf. In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015) (authorized Rule 30(b)(6) deposition of EPA was a sufficient alternative to deposing EPA Administrator about her statements to Congress); *see, e.g.*, *Alexander* v. *F.B.I.*, 186 F.R.D. 137, 138 (D.D.C. 1998) (involving 30(b)(6) of Executive Office of the President). Instead, Plaintiffs are trying to seek testimony from someone who merely reported information that she received from others.

*Fourth*, this Court should reject Plaintiffs' attempts to blame the government for the burdens Plaintiffs are trying to impose by the Subpoena. Plaintiffs argue that the substantial effort it takes to prepare for a deposition as a former high-ranking official "does not reflect any burden that *the subpoena* imposes on Ms. Psaki but rather alleged burdens her former employer imposes." Opp. Mem. at 12. The federal government has clear confidentiality interests at stake when former officials are called to testify, and it has a right to seek to protect testimony subject to governmental privileges, including executive privilege, by fully preparing Ms. Psaki for this

deposition.  As the Fourth Circuit has explained, "a subpoena may impose a burden by invading privacy or confidentiality interests," and courts may "consider the interests of the recipient of the subpoena, as well as others who might be affected."  *Virginia Dep't of Corr.* v. *Jordan*, 921 F.3d 180, 189–90 (4th Cir. 2019) (subpoena seeking information from a business about its customers may, for example, implicate customers' privacy interests).  This Court can and should take into account the burdens imposed on Ms. Psaki by having to prepare and testify under such circumstances, especially when she is not a party to this suit and her testimony is unnecessary and needlessly cumulative.  Furthermore, the reason Ms. Psaki would need to devote time to prepare for and testify about information that could implicate claims of executive privilege is due to the Plaintiffs' filing of this lawsuit and seeking a completely unwarranted deposition at the nascent stage of the case, not to the government's seeking to protect a well-recognized privilege.

Plaintiffs also fault Ms. Psaki for not engaging in additional meet-and-confer efforts to narrow the scope of the subpoena to (presumably) reduce the burden on her.  Opp. Mem. at 10–11.  But Plaintiffs themselves make clear that they would have been unwilling to narrow the subpoena or to consider an alternative to a burdensome deposition.  *See* Opp. Mem. at 19 ("An oral deposition of Ms. Psaki is the only reasonable means of obtaining information in Ms. Psaki's possession that is central to [Plaintiffs'] claims.").

In sum, given the wealth of information Plaintiffs have already collected, and continue to collect, the many direct sources of information at their disposal, and the lack of any actual need for additional information, Plaintiffs have not demonstrated the need for Ms. Psaki's nonparty testimony, let alone a need sufficient to overcome the significant burden that preparing for and sitting for a deposition would impose.

## II.     No exceptional circumstances warrant deposing a former high-ranking official.

Plaintiffs do not dispute that courts require an exceedingly demanding showing of "exceptional circumstances" to justify the deposition of a former high-ranking government official. *Fed. Deposit Ins. Corp.* v. *Galan-Alvarez*, No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015).  Plaintiffs concede that Ms. Psaki is a former high-ranking official, Opp. Mem. at 13, and that they must therefore demonstrate a need for "unique first-hand knowledge" from Ms. Psaki and the exhaustion of all reasonable alternatives, *Galan-Alvarez*, 2015 WL 5602342, at *3 (quoting *Lederman* v. *N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir.2013)); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 704 (9th Cir. 2022). Plaintiffs have failed to make these showings.

*First*, as discussed above, Plaintiffs merely speculate that Ms. Psaki has "unique" first-hand knowledge about the alleged "Censorship Enterprise," WDLA Dkt. 86 at 2, based upon her public statements as Press Secretary.  *See* Opp. Mem. at 14–15.  But it is not disputed that Ms. Psaki's public statements reflect information provided by others.  Her knowledge of the alleged underlying censorship actions cannot be unique because it was obtained, and is obtainable from, other sources.  *See Galan-Alvarez*, 2015 WL 5602342, at *5 (that the FDIC Chairperson "may have attended meetings and requested briefings and documents" on a project that was the subject of the litigation did "not demonstrate that any knowledge she gained of the project was unique; rather, it [was] further evidence that lower-ranking officials generated the information presented to [the] Chairperson"); *In re McCarthy*, 636 F. App'x at 144 (rejecting plaintiffs' argument that "only [the EPA Administrator] can speak to the dichotomy evidenced in her statements [before Congress] and EPA's litigation position" where plaintiffs could pursue a Rule 30(b)(6) deposition as an alternative).

As set forth in Ms. Psaki's motion to quash, Courts have routinely rejected efforts to depose high-ranking government officials where, as here, the information sought can be obtained from other sources.  Psaki Mem. at 16.  This message was reiterated just this week when, in a suit by organizations alleging, among other things, violations of their First Amendment rights, the Fifth Circuit rejected plaintiffs' attempt to depose Texas Attorney General Ken Paxton about what he meant when he made statements on Twitter and in interviews indicating he would pursue civil actions and assist with criminal prosecutions against Texans who facilitate out-of-state abortions.  *In re Paxton*, No. 22-50882, 2022 WL 16921697, at \*1 (5th Cir. Nov. 14, 2022); *see Fund Texas Choice* v. *Paxton*, No. 1:22-CV-859-RP, 2022 WL 6851755, at \*2 (W.D. Tex. Oct. 4, 2022), mandamus granted, order vacated sub nom. *In re Paxton*, No. 22-50882, 2022 WL 16921697 (5th Cir. Nov. 14, 2022).  These public statements contradicted Attorney General Paxton's position in the litigation that he was not an enforcement threat, and the district court found that only he could explain which position represents his official stance.  *Fund Texas Choice*, 2022 WL 6851755, at \*5.  The Fifth Circuit held that it was error to "treat[] Paxton as having unique information merely because he made public statements about a matter that later became the subject of litigation," when plaintiffs could simply ask the Attorney General's *office* for that same information.  *In re Paxton*, 2022 WL 16921697, at \*4.  The court cautioned that, if making public comment "imparts unique knowledge, high-level officials will routinely have to testify."  *Id.*  Here too, on much weaker facts, Plaintiffs "treat [Ms. Psaki] as having unique information merely because [she] made public statements about a matter that later became the subject of litigation."  *See id.*  The real information Plaintiffs purport to seek can be sourced directly from current government employees and social-media companies themselves.

Furthermore, Plaintiffs have not met their burden of showing that Ms. Psaki's first-hand knowledge is "essential to the case." *In re U.S. Dep't of Educ.*, 25 F.4th at 703.  In particular, Plaintiffs have not demonstrated that Ms. Psaki even has information needed to shape their proposed injunctive relief in addition to what Plaintiffs have already obtained.  *See id.* (high-ranking officials' testimony must not only be relevant but also "necessary"); *cf. Am. Broad. Companies, Inc.* v. *U.S. Info. Agency*, 599 F. Supp. 765, 769 (D.D.C. 1984) (agency director properly deposed where he was "the sole person responsible for the creation of the documents in question").

*Second*, Plaintiffs have failed to show "[e]xhaustion of all reasonable alternative sources." *In re U.S. Dep't of Educ.*, 25 F.4th at 704; *In Re Bryant*, 745 F. App'x 215, 221 (5th Cir. 2018) (no "entitlement" to discovery from a high-ranking official if "an alternative witness can provide the relevant information").  As discussed above in the context of the undue burden imposed by the Subpoena, Plaintiffs have not, and cannot, show that they have exhausted all such alternatives when they are currently proceeding with depositions of several current officials and also chose not to pursue testimony from other individuals and offices with direct knowledge of the relevant issues.

*Third*, Plaintiffs argue that the policy rationales that undergird the restrictions against deposing high-ranking government officials—concerns about the separation of powers and discouraging government employment—are not implicated in this case.  *See* Opp. Mem. at 19–20.  But these are the principles that animate the heightened standard for deposing all high-ranking Executive officials, not elements that need to be proven each time an official asserts the protection.  *Cf. Galan-Alvarez*, 2015 WL 5602342, *4–5 (discussing policy rationales to determine whether doctrine applies to former officials but focusing analysis on whether exceptional circumstances were present before quashing subpoena); *In re U.S. Dep't of Educ.*, 25

F.4th at 704–05 (similar); *see also United States* v. *Newman*, 531 F. Supp. 3d 181, 188–89 (D.D.C. 2021).

Moreover, the concerns underlying the restrictions on deposing high-ranking officials are in fact implicated here.  Plaintiffs argue that, because Ms. Psaki was not a decision-maker on the issues underlying their lawsuit, her deposition would not result in unwarranted intrusion on the Executive's decision-making process.  Opp. Mem. at 19–20.  But questioning Ms. Psaki about the basis for information she received from others, including the President, nevertheless involves intrusion upon other decision-making processes, such as those about what and how to report matters to the public.  Such testimony may also be prohibited under various privileges, including those protecting presidential communications and the deliberative process.  That Ms. Psaki was not a relevant decision-maker on matters of coordination with social-media companies only reinforces that she is not the best source of the information Plaintiffs claim they need; it does not mean that she was not a part of, or privy to, other decision-making processes that deserve protection.

Plaintiffs also assert that deposing Ms. Psaki will not deter others from seeking the "coveted role of White House Press Secretary."  Opp. Mem. at 20.  But that is not an argument unique to the role of Press Secretary.  Service in high-ranking government jobs may lead to reputational enhancement and future career opportunities—but courts nevertheless have recognized the chilling effect caused by depositions of high-ranking government officials.  *See Newman*, 531 F. Supp. 3d at 188 (need to "encourage public service by protecting officials from indiscriminate questioning" is a policy rationale (quoting *Galan-Alvarez*, 2015 WL 5602342 at *4)); *In re U.S. Dep't of Educ.*, 25 F.4th at 705 ("If allowed the minute cabinet secretaries leave office, overwhelming and unnecessary discovery could also discourage them from taking that

office in the first place or leaving office when there is controversy."). In other words, on this point, Plaintiffs are merely rejecting the premise of the apex doctrine, which courts routinely accept.

For all of these reasons, Plaintiffs have not demonstrated the "exceptional circumstances" that could justify deposing Ms. Psaki, a former high-ranking official.

### III.     No exceptional circumstances warrant transferring this matter.

Plaintiffs advance three arguments for transfer to the Western District of Louisiana under Rule 45(f), none of which is persuasive.

*First*, Plaintiffs suggest that Ms. Psaki is asking this court to decide issues already decided by the Louisiana district court, particularly whether a deposition would impose an undue burden on Ms. Psaki. Opp. Mem. at 22–24. Not so. Plaintiffs merely point to a single, generalized statement by the district court—"[a]ny burden on Psaki is outweighed by the need to determine whether free speech has been suppressed"—to argue that the district court considered and rejected Ms. Psaki's arguments about undue burden. Opp. Mem. at 27. That argument ignores that the district court did not conduct any analysis of "undue burden" under Rule 45, may have improperly considered Ms. Psaki as a "defendant" rather than as a nonparty, WDLA Dkt. 90 at 15, and did not receive any submissions from Ms. Psaki as to burden. Moreover, by Plaintiffs' logic, all motions to quash in postures such as this one should be heard by the district court issuing the subpoena, as that court will necessarily have considered arguments about the supposed need to issue the subpoena—but Rule 45 establishes the exact opposite paradigm, in which there is a presumption that the court where a witness is located should adjudicate her motion to quash. *See Galan-Alvarez*, 2015 WL 5602342, at *3. Rule 45 authorizes this Court to consider the burdens imposed on Ms. Psaki from her perspective as a nonparty.

13

*Second*, Plaintiffs argue that transfer is appropriate because there is a risk of "inconsistent rulings on depositions sought in multiple districts" and "with regards to the very subpoena at issue here."  Opp. Mem. at 25.  As an initial matter, this Court should quash the subpoena based on undue burden to Ms. Psaki, an issue that is undisputedly not before any other court.  Moreover, although the Louisiana court or the Fifth Circuit may be considering similar legal arguments under the apex doctrine related to the depositions of several high-ranking current government officials, the facts and issues as to Ms. Psaki are distinct.  Plaintiffs do not dispute that Ms. Psaki was a high-ranking official.  *See* Opp. Mem. at 13–14.  Their argument instead hinges on their speculation that she has unique information they cannot source elsewhere.  That is a determination this Court can make based on a straightforward review of the record, and it would not impact another court's rulings about other pending depositions.  *Cf. In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 25–26 (D.D.C. 2018) (transfer was warranted where the motion to quash and a motion to compel in another district "put largely the same information at issue"); *Wultz* v. *Bank of China, Ltd*, 304 F.R.D. 38, 45–46 (D.D.C. 2014) (transfer appropriate where decision on a motion to quash required familiarity with a complex record in the underlying litigation and would "impact four other separate but related actions" in another court).

*Third*, Plaintiffs accuse Defendants and Ms. Psaki of asking this court to consider the merits of the underlying First Amendment lawsuit, based largely on Defendants' passing challenge to Plaintiffs' characterizations of Ms. Psaki's statements as indicative of a conspiracy.  Opp. Mem. at 26 (citing Def. Mem. at 18–21).  But the legal questions before this Court— whether the testimony imposes an undue burden and whether the apex doctrine permits her testimony—are "severable from the merits of the underlying litigation."  *Galan-Alvarez*, 2015

WL 5602342, at *3 ("Ruling on the motion to quash requires this Court to determine whether a legal doctrine protects high-ranking current and former government officials from testifying. It does not necessitate wading into the merits or intricacies of the FDIC's allegations . . . ."). This Court need not comment on, much less delve into, whether there is any legal or factual merit to Plaintiffs' allegations about conspiracies and a "Censorship Enterprise" in order to quash the Subpoena as to Ms. Psaki.

Because there are no exceptional circumstances that warrant transferring this motion to the Western District of Louisiana, and any such transfer would only exacerbate the burdens imposed on Ms. Psaki by requiring her to litigate the merits of this subpoena far away from her home, transfer would be inappropriate. *See* Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments (in assessing transfer requests, "prime concern should be avoiding burdens on local nonparties subject to subpoenas").[4]

## CONCLUSION

For the foregoing reasons, the Subpoena should be quashed.

---

[4] Plaintiffs also accuse Ms. Psaki of improperly responding to the deposition and document demands separately.  Ms. Psaki has written to Plaintiffs informing them that she does not have access to relevant records.  Furthermore, the Louisiana district court did not authorize document discovery at all as to Ms. Psaki.  *See* Exhibit 1.

15

Dated:  November 16, 2022

JENNIFER R. PSAKI

*/s/ Edward E. Bagnell, Jr.*
Edward E. Bagnell, Jr.  (VSB # 74647)
Email:  ebagnell@spottsfain.com
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA  23219
Tel. 804 697-2000
Fax: 804 697-2177

- and -

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP

Jeannie S. Rhee*
2001 K Street, N.W.
Washington, DC 20006
jrhee@paulweiss.com

David K. Kessler*
Muamera Hadzic
1285 Avenue of the Americas
New York, NY 10019
dkessler@paulweiss.com
mhadzic@paulweiss.com

*Attorneys for Movant Jennifer R. Psaki*

* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2022, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will transmit a copy to

all counsel of record as follows:

| | |
|---|---|
| D. John Sauer, Mo. Bar No. 58721<br>Solicitor General<br>Missouri Attorney General's Office<br>Post Office Box 899<br>Jefferson City, MO 65102<br>Tel: (573) 751-8870<br>John.Sauer@ago.mo.gov<br>*Counsel for State of Missouri* | Elizabeth B. Murrill (La #20685)<br>Solicitor General<br>Louisiana Department of Justice<br>1885 N. Third Street<br>Baton Rouge, Louisiana 70804<br>Tel: (225) 326-6766<br>murrille@ag.louisiana.gov<br>*Counsel for State of Louisiana* |
| Jeff Philip Johnson<br>400 S. Phillips Avenue<br>Sioux Falls, SD 57104<br>571-217-1692<br>Email: jeff.johnson@ago.mo.gov<br>Counsel for Respondent State of Missouri | John C. Burns<br>Burns Law Firm<br>P.O. Box 191250<br>St. Louis, Missouri 63119<br>P: 314-329-5040<br>F: 314-282-8136<br>E-mail: john@burns-law-firm.com<br>*Counsel for Plaintiff Jim Hoft* |
| Michael Weitzner<br>Cooper & Kirk PLLC<br>1523 New Hampshire Ave NW<br>Washington, DC 20016<br>202-220-9669<br>Email: mweitzner@cooperkirk.com<br>Counsel for Respondent State of<br>Louisiana | Lauren A. Wetzler<br>Chief, Civil Division<br>Assistant United States Attorney<br>2100 Jamieson Ave.<br>Alexandria, VA 22314<br>Tel: (703) 299-3752<br>lauren.wetzler@usdoj.gov<br>*Attorneys For United States* |
| Jenin Younes<br>John J. Vecchione<br>New Civil Liberties Alliance<br>1225 19th Street N.W., Suite 450<br>Washington, DC 20036<br>Direct: (202) 918-6905<br>E-mail: jenin.younes@ncla.legal<br>*Counsel for Plaintiffs Dr. Jayanta*<br>*Bhattacharya, Dr. Martin Kulldorff,*<br>*Dr. Aaron Kheriaty, and Jill Hines* | |

By: */s/ Edward E. Bagnell, Jr.*
Edward E. Bagnell, Jr. (VSB # 74647)
ebagnell@spottsfain.com
SPOTTS FAIN, P.C.
411 E. Franklin Street, Suite 600
Richmond, VA 23219
Telephone: (804) 697-2000
Facsimile: (804) 697-2100
*Counsel for Movant*